[No. 46857-0-I. Division One. August 13, 2001.]

ARLENE E. TJART, *Appellant*, v. SMITH BARNEY, INC., ET AL., *Respondents*.

886

888

*John P. Mele* (of *Ryan, Swanson & Cleveland, P.L.L.C.*), for appellant.

*Eric D. Lansverk* (of *Hillis Clark Martin & Peterson, P.S.*), for respondents.

WEBSTER, J. — Every firm in the securities industry requires its agents to register with a self-regulatory organization (SRO), such as the New York Stock Exchange or the National Association of Securities Dealers, and be bound by the rules promulgated for the SRO members. This is accomplished by having applicants sign a "Uniform Application for Securities Industry Registration or Transfer," commonly called a "U-4." This form contains an agreement to arbitrate "any dispute, claim, or controversy that may arise between [the applicant and her] firm . . . that is required to be arbitrated under the rules . . . of the organizations with which I register."

Arlene Tjart was a stockbroker at E.F. Hutton, which was acquired by Shearson Lehman Brothers, which was later acquired by Smith Barney. When she was hired by E.F. Hutton, she signed the Form U-4, as well as a trainee agreement which contained an arbitration clause. When Hutton was acquired by Shearson, she completed an employment application which contained another agreement to arbitrate any controversies between her and her employer.

After Tjart was terminated, she sued Smith Barney, alleging that she had been fired for discriminatory reasons in violation of the Washington Law Against Discrimination and in violation of public policy, and that Smith Barney's conduct had constituted sexual harassment and/or creation of a hostile work environment. Smith Barney maintained that she was bound by her agreements to arbitrate and the trial court entered an order staying the proceedings and compelling arbitration. After she failed to arbitrate, the trial court dismissed her complaint. On appeal, Tjart argues that her statutory discrimination claims should not be subject to arbitration. We affirm, because the Shearson Application is an enforceable agreement to arbitrate.

## FACTS

In September 1995, Arlene Tjart sued Smith Barney, alleging that she was wrongfully discharged in September 1992. Her complaint alleged that she was terminated for "illegal discriminatory reasons including but not limited to her sex and age and in violation of law, including Chapter 49.60 RCW" and in violation of public policy. She also alleged that Smith Barney's conduct constituted sexual harassment and/or creation of a hostile work environment in violation of chapter 49.60 RCW.

Smith Barney moved for an order compelling Tjart to arbitrate all of her claims. In its motion, Smith Barney argued that the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1-16, required enforcement of arbitration provisions in three documents executed by Tjart: (1) an Account Executive Trainee Agreement (Trainee Agreement) on February 5, 1987; (2) an Application for Employment with Shearson Lehman Brothers (Shearson Application) on February 11, 1988, and (3) a Uniform Application for Securities Industry Registration or Transfer (Form U-4) (collectively, the Forms) on February 5, 1987.

Tjart opposed Smith Barney's motion, arguing that the FAA did not apply to the claims made in her complaint and that she had not waived her right to a judicial forum. In support of her position, Tjart submitted a declaration in which she testified that she was never provided with a copy of the rules of the American Stock Exchange (AMEX), National Association of Securities Dealers (NASD) or of the New York Stock Exchange (NYSE). She testified that she was never told that any of the arbitration clauses were to apply to state or federal discrimination claims. She further testified that it was never explained to her that, under the documents she executed, she would be obligated to arbitrate any state or federal law discrimination claims, that she had never agreed to arbitrate state or federal law discrimination claims, and that she had never knowingly waived her rights to a judicial forum.

The trial court granted Smith Barney's motion and entered an order staying the judicial proceedings and compelling arbitration of Tjart's claims. Tjart then dismissed her lawyer because she was dissatisfied with his work, and sought new counsel.

No further action was taken, and on May 12, 1999, the King County Superior Court sent Tjart a notice that her case would be dismissed for want of prosecution unless she made written application to the court showing good cause why the case should not be dismissed within 45 days.

Tjart, still without a lawyer, assumed her case had been dismissed, and filed a pro se "Motion to Rescind Dismissal and Continue Stay" on June 4, 1999. In her motion, Tjart asked the court to rescind the dismissal and for additional time to find an attorney because "the law has changed and no longer requires binding arbitration in a case such as mine." Clerk's Papers (CP) at 89-90. Because her original motion was filed without a note for motion, Tjart filed a revised motion on June 24, 1999, which was denied on July 19, 1999.

On July 30, 1999, Tjart filed a pro se motion for reconsideration, which was denied on August 13, 1999. On May 10, 2000, Tjart filed a "reapplication" of her motion for reconsideration. A final order denying her reapplication and dismissing the case was entered July 19, 2000. This appeal timely followed.

## ARBITRATION PROVISIONS

### Shearson Application

The Shearson Application provided,

> I hereby agree that any controversy arising out of or in connection with my compensation, employment or termination of employment shall be submitted to arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc. or the American Stock Exchange Inc. and be resolved in accordance with the rules, then in effect, of such entities. Judgment upon any award rendered by the arbitrators

may be entered in any court having jurisdiction thereof. In the event that I fail to abide by these terms, this section shall in no way limit the Company's other legal rights, including the right to enforce said provisions in a court of competent jurisdiction.

CP at 31.

## APPLICABLE RULES

The above agreement is an agreement to arbitrate by the rules of certain self-regulatory organizations.

1. The NASD Rules

The NASD Rules no longer require the arbitration of statutory discrimination claims. However, the amendment applies only to claims filed after January 1, 1999, the effective date of the rule.[1] Prior to the amendment to exclude employment discrimination claims from the mandatory arbitration scheme, the rule had provided for arbitration of all employment claims, including statutory discrimination claims.

2. The AMEX Rules

The American Stock Exchange Inc. merged with the NASD in November 1998 and is now The American Stock Exchange LLC, with the NASD as the parent company. All arbitration is now performed by NASD Dispute Resolution, Inc., under the NASD rules.[2]

3. The NYSE Rules

The NYSE rules do not require arbitration of statutory employment claims.[3]

---

[1] *See* Exchange Act Release No. 40109 (June 22, 1998) 63 FR 35299 (June 29, 1998) (approving amendment); *http://www.nasdadr.com/arb_discrim_faqs.asp*.

[2] *See* NASD Rulemaking: Order Granting Approval to Proposed Rule Changes and Notice of Filing and Order Granting Accelerated Approval to Amendment No. 2, Relating to the Combination of the American Stock Exchange, Inc. and the National Association of Securities Dealers, Inc. Securities And Exchange Commission Release No. 34-40622; File Nos. SR-Amex-98-32; SR-NASD 98-56; SR-NASD 98-67 (October 30, 1998), available at *http://www.sec.gov/rules/sro/nd9867o.html*.

[3] *http://www.nyse.com/regulation/regulation.html*.

## DISCUSSION

As a preliminary matter, Smith Barney argues that the final Order in this case is not appealable because it involved a "dismissal without prejudice in connection with an order to proceed with arbitration."

In this case, the Order dismisses the case, but does not indicate that the dismissal was without prejudice. But, even assuming that the dismissal was without prejudice, it is still an appealable order.

■ RAP 2.2(a)(3) provides that an appeal as of right may be taken from "[a]ny written decision affecting a substantial right in a civil action which in effect determines the action and prevents a final judgment or discontinues the action." Tjart was terminated on September 25, 1992, and the statute of limitations for her claim is three years.[4] Thus, whether her claim was dismissed with or without prejudice, Tjart is barred by the statute of limitations from refiling her case, and her action has effectively been discontinued. Therefore, her appeal is properly before this court.

■ The parties agree that the sole remaining issue in this case is whether Tjart must arbitrate her claims. This court reviews questions of arbitrability de novo.[5]

The parties agree that if the Shearson Application is enforceable, this case should be affirmed. Because we find that the Shearson Application is enforceable, we do not address the enforceability of the other two agreements.

■ The Federal Arbitration Act, 9 U.S.C. §§ 1-16. (FAA), applies to arbitration agreements in employment contracts.[6] This court must determine whether the FAA requires enforcement of the arbitration agreements in the Forms.

---

[4] RCW 4.16.080(2).

[5] *Kamaya Co. v. Am. Prop. Consultants, Ltd.*, 91 Wn. App. 703, 713, 959 P.2d 1140 (1998), *review denied*, 137 Wn.2d 1012, 978 P.2d 1099 (1999).

[6] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001).

Applicability of the Federal Arbitration Act

Tjart argues that the FAA does not apply to statutory discrimination claims. We disagree.

■ Because "[p]arallel state anti-discrimination laws are explicitly made part of Title VII's enforcement scheme," state discrimination claims are arbitrable to the same extent as Title VII claims.[7]

■ Washington courts have not ruled on the specific question of Congressional intent regarding prospective agreements to arbitrate Title VII claims. The federal circuit courts, except for the Ninth Circuit, have uniformly held that such agreements are enforceable under the FAA.

The Ninth Circuit held in *Duffield v. Robertson Stephens & Co.*[8] that the FAA does not require arbitration of discrimination claims under Title VII. The court examined the 1991 Civil Rights Act and held that mandatory predispute arbitration agreements were contrary to Congress's intent.

Section 118 of the 1991 Civil Rights Act (CRA) encourages the use of arbitration "where appropriate and to the extent authorized by law." The courts that have disagreed with *Duffield* have generally held that the important language in Section 118 is "encouraged" rather than "where appropriate."[9] While the language "where appropriate" does indicate that circumstances exist where arbitration of Title VII claims is not appropriate, this language is not strong enough to prove that Congress intended to preclude enforcement of all mandatory predispute arbitration agreements. The United States Supreme Court has held, "[H]aving made the bargain to arbitrate, the party should be held to it unless Congress itself has evinced an intention to preclude a waiver of judicial remedies for the statutory

---

[7] *Prudential Ins. Co. v. Lai*, 42 F.3d 1299, 1303 n.1 (9th Cir. 1994) (citing *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 477, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982)).

[8] 144 F.3d 1182 (9th Cir.), *cert. denied*, 525 U.S. 982 (1998).

[9] *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198 (2d Cir. 1999); *Koveleskie v. SBC Capital Mkts., Inc.*, 167 F.3d 361 (7th Cir. 1999); *Seus v. John Nuveen & Co.*, 146 F.3d 175 (3d Cir. 1998); *Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 170 F.3d 1 (1st Cir. 1999).

rights at issue."[10] Congress, via the use of the phrase "where appropriate," has not evinced an intention to overcome the liberal federal policy favoring arbitration agreements.

Tjart argues in the alternative that, even if the FAA applies to statutory discrimination claims, she did not agree to arbitrate her claims.

Existence of an Agreement

In determining whether an agreement subject to the FAA exists, courts first apply ordinary state law contract principles to decide whether parties have agreed to arbitrate a particular matter.[11] Under Washington law, all contracts, including agreements to arbitrate, are interpreted under the context rule enunciated in *Berg v. Hudesman*.[12]

The "context rule" is the framework for interpreting written contract language which involves determining the intent of the contracting parties by viewing the contract as a whole, including the subject matter and objective of the contract, all circumstances surrounding its formation, the subsequent acts and conduct of the parties, statements made by the parties in preliminary negotiations, and usage of trade and course of dealings.[13] The application of the context rule leads the courts to discover the intent of the parties based on their real meeting of the minds, as opposed to insufficient written expression of their intent.[14] Context may not be used, however, to contradict, modify or add to the written terms of an agreement.[15] Nor may context be

[10] *Gilmer v. Interstate / Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991).

[11] *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944, 15 S. Ct. 1920, 1924, 131 L. Ed. 2d 985 (1995).

[12] 115 Wn.2d 657, 667, 801 P.2d 222 (1990).

[13] *Id.*

[14] *Olympia Police Guild v. City of Olympia*, 60 Wn. App. 556, 805 P.2d 245 (1991).

[15] *Schweitzer v. Schweitzer*, 132 Wn.2d 318, 327, 937 P.2d 1062 (1997).

used for the purpose of importing into writing an intention not expressed therein.[16]

Tjart argues that she did not agree to arbitrate the claims raised in her complaint when she executed the Forms. Tjart argues that the arbitration provisions are confusing and ambiguous, and cannot be read to require arbitration in this case.

The arbitration clause in the Shearson Application referred to claims relating to termination, and also required that claims "shall be submitted to arbitration before the National Association of Securities Dealers, Inc., the New York Stock Exchange, Inc., or the American Stock Exchange, Inc. and be resolved in accordance with the rules, then in effect, of such entities."

Tjart was already employed by Shearson when "as a matter of office procedure" she was told to sign the Shearson Application. She says that "it was done relatively rapidly" and that after signing it, she was not given a copy. Tjart argues that she was never provided with the rules of the American Stock Exchange, the NYSE, or the NASD. Moreover, she says she was never told that the arbitration agreement encompassed statutory claims, and that arbitration of discrimination claims was not described in the employee handbook disseminated by Shearson.

However, whether or not Tjart read or understood the terms of the Shearson Application to constitute an agreement to arbitrate, she assented to its terms. The Application that Tjart signed indicates that controversies related to Tjart's employment, or termination of her employment, were subject to arbitration. An average person would read the provisions as including arbitration of statutory employment-related claims.[17] There is no reason in this case to

---

[16] *Syputa v. Druck, Inc.*, 90 Wn. App. 638, 645, 954 P.2d 279 (1998).

[17] The Massachussets Appeals Court reached a similar result in *Mugnano-Bornstein v. Crowell*, 42 Mass. App. Ct. 347, 677 N.E.2d 242 (1997). In that case, the plaintiff had also signed the Shearson Application. As here, the application provided that the employee agreed to arbitrate any "controversy arising out of or in connection with compensation, employment, or termination of employment."

abandon long-standing principles of contract law. One who accepts a written contract is conclusively presumed to know its contents and to assent to them, in the absence of fraud, misrepresentation, or other wrongful act by another contracting party. Thus, ignorance of the contents of a contract expressed in a written instrument does not ordinarily affect the liability of one who signs it or who accepts it otherwise than by signing it.

Enforceability of the Agreement

Thus, finding an agreement to arbitrate, we must decide whether the agreement is enforceable. Tjart argues that it is not.

■■ ■■ Under the FAA, arbitration agreements are enforceable "save upon grounds as exist in law or in equity for the revocation of any contract." 9 U.S.C. § 2. In *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,[18] the United States Supreme Court gave an example of the sorts of agreements that are unenforceable under the FAA:

> Of course, courts should remain attuned to well-supported claims that the agreement to arbitrate resulted from the sort of fraud or overwhelming economic power that would provide grounds "for the revocation of any contract."

*Mitsubishi*, 473 U.S. at 627 (quoting 9 U.S.C. § 2). The question under the FAA of whether an arbitration agreement is enforceable is generally determined by reference to common-law principles of general applicability.[19]

Tjart argues that, even if this court finds that she agreed to arbitrate her discrimination claims, the arbitration provision in the Shearson Application cannot be enforced

The court held that this language adequately notified the plaintiff that her sex harassment and discrimination claims were subject to arbitration. *Id.* at 348. The court stated that it was "not aware of any rule that requires an arbitration agreement to contain a list of the specific claims or causes of action which are subject to arbitration in order to be enforceable." *Id.* at 353. In fact, the court stated, "such a requirement would be unreasonable and impractical." *Id.*

[18] 473 U.S. 614, 627, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985).

[19] *Southland Corp. v. Keating*, 465 U.S. 1, 19-20, 104 S. Ct. 852, 79 L. Ed. 2d 1 (1984).

because compelling grounds in law and equity exist for the revocation of the arbitration provision.

Unconscionability

 She argues that the Shearson Application is an unconscionable contract of adhesion. Most courts have rejected plaintiffs' arguments that predispute mandatory arbitration clauses are unconscionable contracts of adhesion because of mere inequality of bargaining power between employer and employee. While the issue of unconscionability of a contract or clause of a contract is a question of law for the court,[20] the decision is one based on the factual circumstances surrounding the transaction in question.[21]

 Washington recognizes two types of unconscionability—substantive and procedural. Substantive unconscionability " 'involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh. . . .' "[22] Tjart does not argue that the arbitration provisions are substantively unconscionable, only that they are procedurally unconscionable. The burden of proving that a contract or contract clause is unconscionable lies upon the party attacking it.[23]

 Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction including " '[t]he manner in which the contract was entered,' whether each party had 'a reasonable opportunity to understand the terms of the contract,' and whether 'the important terms [were] hidden in a maze of fine print. . . .' "[24]

Tjart had a reasonable opportunity to understand that

---

[20] *Nelson v. McGoldrick*, 127 Wn.2d 124, 896 P.2d 1258 (1995).

[21] *Jeffery v. Weintraub*, 32 Wn. App. 536, 648 P.2d 914 (1982).

[22] *Nelson*, 127 Wn.2d at 131 (quoting *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 260, 544 P.2d 20 (1975)).

[23] *Schroeder*, 86 Wn.2d 256, 544 P.2d 20 (1975).

[24] *Nelson*, 127 Wn.2d at 131 (alterations in original) (quoting *Schroeder*, 86 Wn.2d at 260.

she was agreeing to arbitrate her future statutory claims, and the arbitration provision was obvious in the fairly short contract. Under all the circumstances presented here, the clause was not procedurally unconscionable.

## Public Policy-I

 Tjart argues in the alternative that the arbitration agreements are void as against public policy because they required her to waive a future right. Washington courts recognize that a contracting party cannot waive a statutory right before the right exists, and that such waivers are void.[25] Pursuant to RCW 49.60.030(2), any person injured by any act of discrimination in violation of the chapter "shall have a civil action in a court of competent jurisdiction" to enjoin further violations and/or recover damages.

In *Circuit City*, the United States Supreme Court held that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination, and that " ' "by agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral, rather than a judicial, forum." ' "[26] Under *Circuit City*, the agreement does not violate public policy.

## Public Policy-II

 Tjart finally asserts that the arbitration provisions are invalid because they violate the public policy of the state. The test for whether an agreement is "contrary to public policy" is whether it has a tendency to evil, to be against public good, or to be injurious to the public.[27] Any provision in a contract that has the potential of ill effects on

---

[25] *Yakima County Fire Prot. Dist. No. 12 v. City of Yakima*, 122 Wn.2d 371, 384, 858 P.2d 245 (1993).

[26] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 123, 121 S. Ct. 1302, 1313, 149 L. Ed. 2d 234 (2001) (quoting *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991)).

[27] 25 DAVID K. DEWOLF AND KELLER W. ALLEN, WASHINGTON PRACTICE, CONTRACT LAW AND PRACTICE, § 9.27 (1998).

the public or is against the public good will be void as against public policy.[28]

Division Two of this court recently held that the strong public policy in favor of arbitration is outweighed by the strong public policy against wrongful discharge. In *Young v. Ferrellgas, L.P.*,[29] the court held that an employee who had signed an arbitration agreement could nevertheless maintain a whistleblower action for retaliatory, wrongful discharge and for violation of the overtime laws. The court reasoned,

> An employment contract cannot extinguish [RCW 49.17.160's] statutory cause of action for wrongful discharge.
>
> . . . .
>
> [An employee's] right to be free from wrongful termination in contravention of public policy may not be altered or waived by private agreement, and is therefore a nonnegotiable right.
>
> . . .
>
> Allowing an employment contract arbitration provision to replace [RCW 49.52.070's] statutory cause of action would thwart public policy guaranteeing fair wages, codified by our Legislature.

*Young* at 529-32.[30]

Reasoning by analogy, Tjart argues that the right to be free from workplace discrimination and wrongful termination is a nonnegotiable right codified by our Legislature, and that allowing an employment contract arbitration clause to replace the statutory cause of action would thwart public policy guaranteeing employees the right to be free from discrimination. However, *Young* was not an FAA case. It is possible that the *Young* panel, in not addressing FAA issues because they were not relevant to the resolution of the case, used state law grounds that would be inapplicable in the FAA context. Moreover, *Young* was a whistleblower case involving workplace health and safety issues.

---

[28] *Id.*

[29] 106 Wn. App. 524, 21 P.3d 334 (2001).

[30] Citing *Smith v. Bates Technical Coll.*, 139 Wn.2d 793, 809, 991 P.2d 1135 (2000); *Wilson v. City of Monroe*, 88 Wn. App. 113, 117-18, 943 P.2d 1134 (1997).

Washington has long favored arbitration of disputes,[31] but contract law still provides that "parties to a contract may determine the specific terms of the agreement, but the contract provisions are subject to limitation and invalidation if they contravene public policy."[32] However, Tjart has not made out a clear case that enforcement of the arbitration clauses would contravene Washington's public policy against discrimination. Washington courts have been hesitant to "invoke public policy to avoid express contract terms absent legislative action."[33] Moreover, the United States Supreme Court noted that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination.[34] Tjart, by signing the arbitration agreements, did not give up her right to be free from workplace discrimination, only the ability to raise the issue in court. Because she has not given up her substantive rights, the arbitration agreements in this case are not void as against public policy.

We affirm.

AGID, C.J., and COLEMAN, J., concur.

Review denied at 145 Wn.2d 1027 (2002).

---

[31] *Munsey v. Walla Walla Coll.*, 80 Wn. App. 92, 94, 906 P.2d 988 (1995) ("We begin . . . by noting the strong public policy in this state favoring arbitration of disputes.").

[32] *Whitaker v. Spiegel, Inc.*, 95 Wn.2d 661, 667, 623 P.2d 1147, 1150 (1981) (citing *Mut. of Enumclaw Ins. Co. v. Wiscomb*, 95 Wn.2d 373, 622 P.2d 1234 (1980); *Giambattista v. Nat'l Bank of Commerce of Seattle*, 21 Wn. App. 723, 735, 586 P.2d 1180 (1978); RUSSEL J. WEINTRAUB, COMMENTARY ON THE CONFLICT OF LAWS § 7.3C (2d ed. 1980)).

[33] *Miller v. Aetna Life & Cas. Co.*, 80 Wn. App. 55, 906 P.2d 372 (1995).

[34] *Circuit City Stores, Inc.*, 532 U.S. at 120-21, 121 S. Ct. at 1310.