IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STEPHEN MAYNE, a married man, | ) | No. 32978-0-III |
| Appellant, | ) | |
| v. | ) | |
| MONACO ENTERPRISES, INC., a Delaware for-profit corporation; GENE MONACO, an individual, and ROGER BARNO, an individual, | ) | PUBLISHED OPINION |
| Respondents. | ) | |

KORSMO, J. — Stephen Mayne appeals from the trial court's rulings compelling arbitration of his employment termination claims and dismissing his action for damages. We conclude that the 2013 arbitration agreement was procedurally unconscionable and remand for arbitration under the 2011 agreement.

## FACTS

Mr. Mayne worked for Monaco Enterprises from 1997 until late 2013. He lived in Massachusetts when initially hired by Monaco, but relocated to Texas six years later. In

September 2010, Mr. Mayne and his family moved to Spokane to work closer to the company's home office. The reason for that move is the disputed question in this litigation.

Mr. Mayne contends that he was promised a promotion upon his supervisor's retirement if he moved to Spokane. Monaco contends that Mr. Mayne simply was told he had a much better chance of promotion if he worked closer to the home office. The supervisor in question had not retired at the time of this litigation and Mr. Mayne was never promoted.

Mr. Mayne held the same position in Spokane as he did in Texas. In May 2011 he signed an arbitration agreement. The parties are uncertain whether Mr. Mayne had signed an arbitration agreement prior to moving to Spokane. Mr. Mayne signed a new arbitration agreement in March of 2013. Various provisions of the two agreements figure prominently in this appeal.

The 2013 agreement stated that Monaco would not have continued to employ Mr. Mayne if he did not execute the agreement. Clerk's Papers (CP) at 23. The 2011 agreement did not contain a similar provision. The 2011 agreement also allowed the employee 30 days after signing to consult with an attorney and opt out of the agreement. CP at 21-22. Both provisions required that arbitration procedures would be governed by

state law. CP at 21, 24. The original agreement set venue in the county where the claim

arose, but the revised agreement set venue in Spokane County. CP at 22, 24.

Under the 2011 agreement, Monaco would pay the costs of the arbitration and

both sides would be responsible for their own attorney fees, but the arbitrator was

permitted to award costs and attorney fees to the prevailing party "to the extent permitted

by law." CP at 22. In contrast, the 2013 agreement required the parties to evenly share

the costs of the arbitrator, but the prevailing party "shall be entitled to recover the costs of

arbitration against the non-prevailing party, including without limitation, reasonable

attorney's fees, costs, and litigation expenses including expert fees and costs." CP at 24.

The 2013 agreement, unlike its predecessor, contained a severance clause directing a

court to amend or remove an "offending provision" while leaving the remainder of the

agreement intact. CP at 24.

Mr. Mayne's employment was terminated at the end of 2013. He promptly filed

suit against Monaco in the Spokane County Superior Court alleging theories of negligent

misrepresentation and promissory estoppel. Monaco moved to dismiss and compel

arbitration. The trial court granted the motion.

Mr. Mayne then timely appealed. The matter proceeded to oral argument before a

panel of this court.

No. 32978-0-III
*Mayne v. Monaco Enterprises, Inc.*

ANALYSIS

Mr. Mayne challenges the trial court's ruling, arguing that the 2013 arbitration agreement was both procedurally and substantively unconscionable. We first briefly address some general principles governing this appeal before turning to the claim of procedural unconscionability.

The question of whether an arbitration agreement is unconscionable is reviewed de novo. *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 735, 349 P.3d 32 (2015). The burden rests on the party opposing arbitration. *Id.* The Federal Arbitration Act (FAA) states a strong federal policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S. Ct. 1647, 114 L. Ed. 2d 26 (1991). In accordance with the Supremacy Clause, Washington and other states must comply with the policy of the FAA and presume arbitrability. *Zuver v. Airtouch Commc'ns, Inc.*, 153 Wn.2d 293, 301-02, 103 P.3d 753 (2004). However, the states need not enforce agreements that violate "generally applicable contract defenses" including unconscionability. *Id.* at 302 (citing FAA § 2).

Washington recognizes that provisions of a contract can be either substantively unconscionable or procedurally unconscionable. *Schroeder v. Fageol Motors, Inc.*, 86 Wn.2d 256, 259-60, 544 P.2d 20 (1975). Procedural unconscionability involves impropriety in the formation of an agreement. *Id.* at 260. Substantive unconscionability

4

involves overly harsh or one-sided provisions of an agreement. *Id.* Mr. Mayne contends both types are present in this case. Accordingly, we turn to those contentions.

*Procedural Unconscionability*

Mr. Mayne first argues that the 2013 arbitration agreement is an adhesion contract and therefore should be rejected as procedurally unconscionable because he had no choice but to sign the agreement. An adhesion contract does not itself demonstrate that an agreement was procedurally unconscionable. Nonetheless, we do agree that the 2013 arbitration agreement was procedurally unconscionable.

Procedural unconscionability exists if there was no "meaningful choice" under all the circumstances surrounding the making of the agreement. *Zuver*, 153 Wn.2d at 303. Factors to be considered include the manner in which the contract was created, whether both parties had a reasonable opportunity to understand the terms of the agreement, and whether important terms were buried in a lot of fine print. *Id.*

Mr. Mayne concedes that he is not arguing the second factor. He was not denied an opportunity to understand the terms of the agreement. Brief of Appellant at 11. He does argue that the third fact does favor finding procedural unconscionability, noting that the arbitration agreements were included in a 60 page employee handbook. This argument is unpersuasive. Each of the arbitration agreements is a two page document, labeled an arbitration agreement, and contains an acknowledgement that Mr. Mayne had read the arbitration agreement, knew that he was waiving his right to a jury trial, and

5

understood the agreement. CP at 22, 24. Under these facts, the arbitration agreement was not buried in fine print even if it was part of a much larger document.

The circumstances surrounding the making of the agreement present a closer question. Mr. Mayne argues first that he was required to sign an adhesion contract. An adhesion contract exists if a standard printed contract was prepared by one party on a "take it or leave it" basis with no genuine bargaining equality between the parties. *Zuver*, 153 Wn.2d at 304. We agree that the arbitration agreements between Mayne and Monaco constituted adhesion contracts. However, the existence of an adhesion contract is not a dispositive factor, but constitutes a fact that bears on procedural unconscionability. *Id.* In *Zuver*, the Court noted that Washington cases had long rejected the argument that unequal bargaining position, even when exemplified by an adhesion contract, justified finding procedural unconscionability. *Id.* at 305. The court then summed up that issue:

> In the end, Zuver relies solely on her lack of bargaining power to assert that we should find the agreement procedurally unconscionable. This will not suffice. At minimum, an employee who asserts an arbitration agreement is procedurally unconscionable must show some evidence that the employer refused to respond to her questions or concerns, placed undue pressure on her to sign the agreement without providing her with a reasonable opportunity to consider its terms, and/or that the terms of the agreement were set forth in such a way that an average person could not understand them.

*Id.* at 306-07.

Mr. Mayne, however, is in a different situation than the plaintiff in *Zuver*. There the employee was presented with the arbitration agreement when the job initially was

6

offered to her and had fifteen days to accept or reject the position. *Id.* at 298, 306. Here, Mr. Mayne had worked for the company many years, including a year in Spokane, before the first arbitration clause was presented to him. That clause, as noted previously, was optional—the employee had 30 days to opt out after signing the agreement. CP at 21. There was no such option with the new agreement, which also contained the following sentence in the second paragraph:

> Moreover, had the Employee not agreed to execute this Arbitration Agreement, the Company would not have agreed to employ the Employee.

CP at 23.

Although curiously[1] worded, this sentence bears only one meaning in this context—Mr. Mayne would be fired if he did not consent to execute the agreement. Under the circumstances, this was no "meaningful choice." *Zuver*, 153 Wn.2d at 303. Instructive is *Zuver*'s companion case, *Adler v. Fred Lind Manor*, 153 Wn.2d 331, 103 P.3d 773 (2004).

There the court was unable to resolve the employee's procedural unconscionability claim. The employee contended he was told that he would be fired if he did not sign the agreement, while the employer denied any such statement or intention. *Id.* at 350. The

---

[1] The language appears to be designed for an arbitration agreement entered into in conjunction with the initial offer of employment. In light of our conclusion here, we recommend that other approaches be used to impose an arbitration requirement on existing employees.

7

court concluded that if such a threat was made, it would support the employee's procedural unconscionability claim. *Id.* The court then returned the matter to the trial court for resolution of the factual dispute. *Id.* at 350-51.

Unlike *Adler*, there is no disputed question about the employer's intent here. Whether or not Monaco actually would have fired Mr. Mayne, the agreement is a clear statement that it would do so and anyone signing the agreement would understand the statement in that manner. Under these circumstances, the process by which the 2013 agreement supplanted the existing 2011 agreement was procedurally unconscionable. Mr. Mayne could decline to sign the agreement and immediately end his employment, or he could sign the agreement and continue working. There was no meaningful choice.

A procedurally unconscionable agreement is void because the waiver of the right to a jury trial is not "knowing, voluntary, and intelligent." *Adler*, 153 Wn.2d at 350 n.9. In typical circumstances, a void agreement means that the right to jury trial prevails. That is not the situation here, however, due to the 2011 arbitration agreement. The parties agreed at oral argument that if the 2013 agreement was invalid, the 2011 agreement would govern.[2] We concur in that assessment. The 2011 agreement was not

---

[2] Counsel for Mr. Mayne did argue that the 2011 agreement was procedurally unconscionable because it was presented to Mr. Mayne after he had relocated to Spokane and started building a house, leaving him financially unable to refuse. In light of the fact that the employee had 30 days to opt out of arbitration and there was no threat of termination, we see nothing unconscionable in the 2011 agreement.

adopted in an unconscionable manner. Indeed, the thirty day opt out provision ensured that Mr. Mayne's decision to sign the arbitration agreement was a voluntary and meaningful choice.

There is a fine line between informed consent and coercion in this context. An employer can condition employment upon the employee waiving his right to a jury trial and *voluntarily* signing an arbitration agreement. That is easily accomplished at the onset of employment, as in *Zuver*, where the employee knows the condition before agreeing to accept employment.

The task is more difficult when there is already an existing at-will employment relationship. As the 2011 agreement in this case demonstrates, we believe most employees will voluntarily sign an arbitration agreement upon request, even if they are not required to sign in order to remain employed. Still, they should be aware of the consequence of not agreeing if the employer is set on having an arbitration-only work force. To that end, we believe an employer should in some manner notify the employee of the policy and then take some action to ameliorate the coercive impact of that information in order to ensure a voluntary decision. Perhaps the employee could be offered a reasonable time to sign before voluntarily leaving employment, or could be

9

offered some incentive[3] as consideration for the waiver of the constitutional right. A meaningful choice is needed. A choice compelled by the threat of immediate termination is not a meaningful choice.

*Substantive Unconscionability*

We need only briefly discuss this topic in light of the procedural unconscionability ruling since the arguments Mr. Mayne raised were primarily directed at provisions of the 2013 agreement. However, we briefly discuss one of those arguments in the event it becomes an issue during arbitration.

Mr. Mayne challenged the agreement's attorney fees provision on the basis that it conflicted with his statutory right to attorney fees under RCW 49.48.030, RCW 49.52.050, and RCW 49.52.070 in the event he prevails on his claims. Monaco contended that the argument was premature under *Zuver* and stated at oral argument that it would not attempt to deny Mayne his rightful fees under the statutes if he prevailed at arbitration. Monaco is correct.

---

[3] As an example, we note that a noncompetition agreement entered into at the start of employment is ordinarily valid as part of the employment contract, but any change to the agreement or a newly incorporated noncompetition agreement requires independent consideration to be valid. *See Labriola v. Pollard Grp., Inc.*, 152 Wn.2d 828, 100 P.3d 791 (2004). We also note that some states require consideration even for arbitration agreements entered in conjunction with initial employment. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770 (Mo. 2014); *Cheek v. United Healthcare of the Mid-Atlantic, Inc.*, 378 Md. 139, 835 A.2d 656 (2003).

No. 32978-0-III
*Mayne v. Monaco Enterprises, Inc.*

A similar argument arose in *Zuver*. There the court concluded that a provision is not substantively unconscionable merely because the arbitrator might not abide by the law. 153 Wn.2d at 310-11. Such an argument is speculative. *Id*. at 312. We agree with Monaco that this argument likewise is speculative here. We presume that the arbitrator would apply the correct law in the event Mr. Mayne prevails.

Accordingly, we affirm the decision to compel arbitration, but modify that decision to require that arbitration proceed under the terms of the 2011 arbitration agreement.

Affirmed and modified.

_____
Korsmo, J.

I CONCUR:

_____
Fearing, J.

11

No. 32978-0-III

BROWN, A.C.J. (concurring in result) — Regarding procedural unconscionability, I agree Stephen Mayne lacked a meaningful choice when considering the 2013 arbitration agreement, however, I disagree with the majority's rationale. Except for moving to Washington to better position himself for promotion (a disputed fact), Mr. Mayne's situation as an at-will employee in 2013 is little different from when he signed the 2011 arbitration agreement. My focus is the lack of explanation of employee rights given up under Washington law that allow an employee to recover attorney fees in employee termination wage-dispute cases, but not the employer. No explanation of arbitration costs was given. Not only is arbitration fee splitting included in the 2013 agreement, but attorney fees can be awarded to Monaco. Thus, Mr. Mayne lacked knowledge to make an intelligent decision. Therefore, without knowledge of costs and what Mr. Mayne was giving up, he lacked a meaningful choice. Accordingly, I concur in the result.

Regarding substantive unconscionability, this record is unfortunately silent about the trial court's reasoning in ordering arbitration. Mr. Mayne made his record of financial hardship and high up front arbitration costs. In my view, Monaco failed to sufficiently respond and did not offer to assume arbitration costs or give up its right to collect attorney fees from Mr. Mayne. Under *Zuver, Adler*, and *Mendez v. Palm Harbor Homes, Inc.*, 111 Wn. App. 446, 465-70, 45 P.3d 594 (2002) (adopted by *Zuver*), the

No. 32978-0-III
*Mayne v. Monaco Enter. - Concurrence*

trial court failed to make a record on its exercise of discretion, if any. If not exercised, an abuse of discretion exists. I would remand or dissent, but do not because my substantive unconscionability concerns are not present under the 2011 agreement.

Brown, A.C.J.

2