IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| COLLEEN FLYNN, an individual, <br><br> Respondent, <br><br> v. <br><br> MASTER BUILDER ASSOCIATION OF KING AND SNOHOMISH COUNTIES, a Washington nonprofit corporation; and JERRY HALL, an individual, <br><br> Appellants. | No. 86023-2-I <br><br> DIVISION ONE <br><br> UNPUBLISHED OPINION |

DÍAZ, J. — Master Builders Association of King and Snohomish Counties (MBAKS) appeals the superior court's refusal to compel the parties to arbitrate claims filed by MBAKS' former employee, Colleen Flynn. The court found that the parties did not agree to mandatory arbitration essentially because one clause of MBAKS' arbitration contract states Flynn herself "may initiate arbitration." We disagree, in short, because that clause must be harmonized with the contract's otherwise clearly mandatory language. We also reject Flynn's cursory secondary arguments that the arbitration contract is unconscionable. Thus, we reverse the court's denial of MBAKS' motion to compel arbitration and remand for further proceedings, including for the court to determine the scope of the contract's

arbitration provisions and, if necessary, whether the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, applies, neither of which the court addressed previously.

## I.     BACKGROUND

MBAKS defines itself as "a non-profit trade association representing 2500 businesses involved in the homebuilding industry."  On Flynn's first day at MBAKS in November 2020, Flynn received numerous documents to sign.  These documents included MBAKS' "DISPUTE RESOLUTION AND ARBITRATION POLICY" (hereinafter the "Arbitration Policy" or "Policy").  The same day, Flynn also received and signed the "EMPLOYEE ACKNOWLEDGMENT FORM" (hereinafter the "Acknowledgment") included alongside the Policy, indicating that she "underst[ood] that the Policy applies to [her]."  The details of both documents (together the "arbitration contract") will be discussed further below.

In October 2022, Flynn formally requested an internal review of her claims that MBAKS' Executive Director, Jerry Hall, "singl[ed] out women at [the] company" and engaged in "retaliatory" actions against Flynn.  In January 2023, MBAKS terminated Flynn's employment.  Flynn claims MBAKS then offered her numerous versions of a separation agreement.  She further claims these separation agreements contained confidentiality and non-disparagement provisions.[1]

In June 2023, Flynn brought a lawsuit in superior court against both MBAKS and Hall, ultimately asserting the following four causes of action:

- Gender discrimination in violation of the Washington Law Against Discrimination, chapter 49.60 RCW, (WLAD);

---

[1] The separation agreement(s) are not contained in the appellate record before us.

- Unlawful retaliation in violation of the WLAD;[2]
- A tort claim for wrongful discharge in violation of public policy; and
- A claim brought under the Silenced No More Act.[3]

In August 2023, MBAKS moved to compel arbitration, citing the Policy and the accompanying Acknowledgment signed by Flynn.

In September 2023, the court denied MBAKS' motion to compel, finding the Arbitration Policy's language merely permitted but did not require arbitration. In short, the court found that there was a "discrepancy" between clear mandatory language in the Acknowledgment and, what the court interpreted as, permissive language in the Policy. The court then resolved the purported conflict between the Acknowledgment and Policy in favor of Flynn by relying on a clause in the Policy which stated that "'[i]n the event that a discrepancy exists between this policy and the employee acknowledgement and agreement forms, the policy is binding.'"

MBAKS unsuccessfully moved for reconsideration and now appeals.[4]

## II. ANALYSIS

### A. Whether the Arbitration Contract's Terms are Permissive or Mandatory

---

[2] In Flynn's original complaint, her wrongful discharge claim was brought under the Domestic Violence Leave Act, chapter 49.76 RCW.

[3] Enacted in 2022, the Silenced No More Act states that "an agreement by an employer and an employee not to disclose or discuss conduct, or the existence of a settlement involving conduct, that the employee reasonably believed . . . to be illegal discrimination . . . is void and unenforceable." RCW 49.44.211; LAWS OF 2022, ch. 133, § 2. Additionally, Flynn's Silenced No More Act claim is brought only against MBAKS. She brought the WLAD and tort claims against both MBAKS and Hall.

[4] MBAKS appealed both the order denying arbitration and the order denying reconsideration. However, MBAKS' appellate briefing presents no argument specifically on the motion for reconsideration and thus we need not consider it. Brown v. Vail, 169 Wn.2d 318, 336 n.11, 237 P.3d 263 (2010) ("A party that offers no argument in its opening brief on a claimed assignment of error waives the assignment.").

1. Principles of Interpretation and the Standards of Review

"The general rule is that *whether* and *what* the parties have agreed to arbitrate is an issue for the courts to decide unless otherwise stipulated by the parties." Tacoma Narrows Constructors v. Nippon Steel-Kawada Bridge, Inc., 138 Wn. App. 203, 213, 156 P.3d 293 (2007) (emphasis added). As to *whether* the parties have agreed to arbitrate an issue, "[a]rbitration is a matter of contract and, therefore, parties cannot be compelled to arbitrate unless they have agreed to do so." Berman v. Tierra Real Est. Grp., LLC, 23 Wn. App. 2d 387, 394, 515 P.3d 1004 (2022).

"When the validity of an agreement to arbitrate is challenged, courts apply ordinary state contract law." McKee v. AT&T Corp., 164 Wn.2d 372, 383, 191 P.3d 845 (2008), abrogated on other grounds by AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 340, 352, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011). "The purpose of contract interpretation is to ascertain the intent of the parties." Kelley v. Tonda, 198 Wn. App. 303, 311, 393 P.3d 824 (2017). Washington follows the objective manifestation theory of contracts, meaning courts "determine the parties' intent by focusing on the objective manifestations expressed in their contract rather than focusing on the parties' unexpressed subjective intentions." Chevalier v. Woempner, 172 Wn. App. 467, 476, 290 P.3d 1031 (2012). For this reason, courts "must distinguish the parties' intent at the time of formation from the interpretations the parties are advocating at the time of the litigation." Int'l Marine Underwriters v. ABCD Marine, LLC, 179 Wn.2d 274, 282, 313 P.3d 395 (2013).

Three primary principles of contract interpretation are particularly pertinent

here. First, when courts interpret contracts, words are given their "ordinary, usual, and popular meaning unless a contrary intent is shown from the *entirety* of the agreement." Condon v. Condon, 177 Wn.2d 150, 163, 298 P.3d 86 (2013) (emphasis added); Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 504, 115 P.3d 262 (2005) (same). Second, a "court will not read ambiguity into a contract 'where it can reasonably be avoided.'" GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014) (quoting Mayer v. Pierce County Med. Bureau, Inc., 80 Wn. App. 416, 421, 909 P.2d 1323 (1995) (internal quotation marks omitted)); Nishikawa v. U.S. Eagle High, LLC, 138 Wn. App. 841, 849, 158 P.3d 1265 (2007) (same). Third, "*[w]here possible,* we harmonize clauses that seem to conflict in order to give effect to all of the contract's provisions." Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 710, 375 P.3d 596 (2016) (emphasis added); Healy v. Seattle Rugby, LLC, 15 Wn. App. 2d 539, 545, 476 P.3d 583 (2020) (same); Radliff v. Schmidt, 27 Wn. App. 2d 205, 211, 532 P.3d 622 (2023) (same).

Moreover, Washington has its own policy of favoring arbitration, meaning, "[c]ourts must indulge every presumption in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." Verbeek Properties, LLC v. GreenCo Envtl., Inc., 159 Wn. App. 82, 87, 246 P.3d 205 (2010). Washington's policy in favor of arbitration appears to originate from this court's decision in King County v. Boeing Co., 18 Wn. App. 595, 602, 570 P.2d 713 (1977). In adopting this policy, this court cited to a wide array of federal and state precedents favoring arbitration. Id. at 602-03 (citing inter alia Waterbury Bd. of Educ. v. Waterbury

5

Teachers Ass'n, 168 Conn. 54, 357 A.2d 466 (1975)). This court reasoned that extrajudicial remedies like arbitration "'provide[] a means of giving effect to the intention of the parties, easing court congestion, and providing a method more expeditious and less expensive for the resolution of disputes.'" Id. at 602 (quoting Vernon v. Drexel Burnham & Co., 52 Cal. App. 3d 706, 715, 125 Cal. Rptr. 147 (1975)).

In turn, "[t]he party opposing arbitration bears the burden of showing the arbitration clause is inapplicable or unenforceable." Verbeek, 159 Wn. App. at 86-87. And, when a valid arbitration provision includes sufficiently broad language, "'all doubts are to be resolved in favor of arbitrability.'" Wiese v. Cach, LLC, 189 Wn. App. 466, 477, 358 P.3d 1213 (2015) (quoting Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999)).[5]

Finally, we review the superior "court's conclusions of law pertaining to contract interpretation de novo." Viking Bank v. Firgrove Commons 3, LLC, 183 Wn. App. 706, 712, 334 P.3d 116 (2014). An "[a]ppeal of an order denying a motion to compel arbitration" is reviewed "de novo." Verbeek, 159 Wn. App. at 86. "We review a document's *purported* ambiguity de novo as a question of law." In

---

[5] Recently, the United States Supreme Court held that "a court must hold a party to its arbitration contract just as the court would to any other kind" and "a court may not devise novel rules to favor arbitration over litigation." Morgan v. Sundance, Inc., 596 U.S. 411, 418, 142 S. Ct. 1708, 212 L. 2d 753 (2022). In other words, "'Morgan teaches that there is no 'strong *federal* policy favoring enforcement of arbitration agreements.'" Armstrong v. Michaels Stores, Inc., 59 F.4th 1011, 1014 (9th Cir. 2023) (emphasis added) (quoting Fisher v. A.G. Becker Paribas Inc., 791 F.2d 691, 694 (9th Cir. 1986)). The question remains whether Morgan and Armstrong disturb Washington's *own* policy of favoring arbitration. That said, as will become apparent, our decision does not rely on such a policy, but on standard principles of contract interpretation.

re 1934 Deed to Camp Kilworth, 149 Wn. App. 82, 86, 201 P.3d 416 (2009) (emphasis added).

2. Discussion

MBAKS' arbitration contract is four pages long and, again, is composed of two parts, the Policy and the Acknowledgment. Stated generally, the Policy details a three-step process for disputes between MBAKS and an employee. First, the employee works with their supervisor and human resources personnel to informally resolve the concern at issue. Second, the employee may formally request an internal review, which will prompt an investigation. Finally, the Policy states, "[i]f your concern has not been resolved through the formal, internal review process, you *may initiate arbitration*." (Emphasis added). The Acknowledgment, which follows the Policy, states the employee's signature "confirms that [they] understand" the foregoing.

On appeal, Flynn argues the Policy and Acknowledgment are ambiguous and, thus, must be construed against the drafter, MBAKS. Specifically, she avers that the Policy's usage of "may initiate arbitration" must be read "through the eyes of an employee, who rightly and reasonably interprets the Arbitration Policy as a choice between arbitration and other avenues for resolution, including litigation." Further, she asserts that, while—as the court "properly recognized"—"the [Acknowledgment] contains conflicting *mandatory language* that private arbitration is required," the Acknowledgment is "*subservient* to the [] Policy" because the latter contains a provision stating that, if "'a discrepancy exists between this Policy and the employee acknowledgment and agreement forms [i.e., including the

7

Acknowledgment], the Policy is binding.'" We disagree.

As a basic principal of contract interpretation, this court is bound to "not read ambiguity into a contract 'where it can reasonably be avoided.'" GMAC, 179 Wn. App. at 135 (quoting Mayer, 80 Wn. App. at 421) (internal quotation marks omitted). Here, we avoid ambiguity or a so-called "discrepancy" by interpreting the Policy's statement that an employee "may initiate arbitration" as simply permitting employees to sua sponte pursue arbitration at any point they become dissatisfied with MBAKS' formal internal review process. In other words, the employee need not "wait around" for MBAKS to initiate arbitration.

Such a reading is harmonious with the Policy's remaining provisions which generally (1) explain in detail mechanically how to request and go through arbitration, and—most importantly—which (2) require the employee to arbitrate claims that fall within the scope of the Policy.

Specifically, the Policy states, in its opening paragraph, that its purpose is to "discuss and resolve concerns fairly and directly—*without having to resort to a court* proceeding." (Emphasis added). After the singular provision Flynn relies on, the Policy then explains what an arbitration is, how it is similar or different than a court action, and advises employees that arbitration "replaces a court proceeding or a jury trial."

Most plainly, in the paragraph following the "may initiate arbitration" provision, the Policy contains a section entitled, in bold and italicized text no less, "What Claims *Must* Be Submitted to Arbitration?" This section methodically lays out the Policy's scope, specifically identifying the types of claims that must be

8

arbitrated and those claims that "cannot be subject to arbitration" or may be filed "in aid of arbitration." Finally, the Policy further warns that a "suit may be brought to compel arbitration."

What's more, these mandatory arbitration provisions in the Policy are consistent with provisions in the Acknowledgment, which also call for mandatory arbitration. In its first paragraph, the Acknowledgment requires an employee to acknowledge that the Policy "explains how employment disputes between MBAKS and [an employee] *must* be resolved, including the fact that any covered claim not resolved through the formal, internal review process *must be resolved through arbitration*." (Emphasis added). Further, the Acknowledgment states, in bulleted text, that the "Policy includes the arbitration of covered claims and, as such, *waives my right to resolve covered claims in a court proceeding* and, instead, *requires arbitration* of those claims." (Emphasis added).

In contrast, there are no provisions in the Policy or the Acknowledgment which explain a court proceeding, explain how to initiate such an action, or the consequences if a lawsuit is ignored (e.g., moving for default).

Furthermore, our interpretation—that the Policy simply permits the employee to initiate arbitration on their own initiative—is also consistent with standard dictionary definitions of the term "may." BLACK'S LAW DICTIONARY 1169 (12th ed. 2024) ("To be permitted <the plaintiff may close>"); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1396 (1993) ("have permission to . . . have liberty to"); see also Black v. Nat'l Merit Ins. Co., 154 Wn. App. 674, 680, 226 P.3d 175 (2010) ("If a term in a [contract] is undefined, courts may look to the dictionary to

determine the common meaning" in light of the context of the contract."); Hearst, 154 Wn.2d at 504 (courts give "words in a contract their ordinary, usual, and popular meaning unless the entirely of the agreement clearly demonstrates a contrary intent.").

In her opposition brief on appeal, Flynn minimizes these repeated calls for mandatory arbitration within the Policy and the Acknowledgment and reads the Policy's statement that the employee "may initiate arbitration" in a vacuum. Moreover, Flynn tellingly ignores entirely the principle of contract interpretation that requires us to avoid reading ambiguity into the arbitration contract if possible.

We are unable to either view words in a vacuum or countenance any possible ambiguities, as we must "view the contract as a whole, interpreting particular language in the context of other contract provisions" and must "attempt to harmonize clauses that seem to conflict." Ruston v. PC Collections, LLC, 25 Wn. App. 2d 382, 400, 523 P.3d 805 (2023) (citations omitted); State v. Comer, 176 Wn. 257, 263, 28 P.2d 1027 (1934) ("The general purpose and design of a contract will not be permitted to be frustrated by allowing too much force to be given to single words or clauses.").

Stated otherwise, Flynn's interpretation would render the Policy and Acknowledgment's repeated calls for mandatory arbitration superfluous. Ley v. Clark County Pub. Transp. Benefit Area, 197 Wn. App. 17, 30, 386 P.3d 1128 (2016) ("we interpret statutes and contracts to give effect to all the language used and without rendering any portion meaningless."). Most notably, if the Policy did not intend mandatory arbitration, we must explain or render superfluous a section

entitled "What Claims *Must* Be Submitted to Arbitration?" which, again, methodically walks through claims which must be arbitrated at length. (Emphasis added). We cannot explain what such a section would mean and decline to render such a section superfluous.

In sum, we avoid reading ambiguity into the arbitration contract by interpreting the language Flynn relies on simply to mean an employee (a) may initiate arbitration without waiting for MBAKS, but (b) must still submit certain claims to arbitration. On remand, the court will resolve *which* of Flynn's claims are within the scope of the arbitration contract, i.e., "what the parties have agreed to arbitrate." Tacoma Narrows Constructors, 138 Wn. App. at 213.

B.      Enforceability of the Arbitration Policy

"Arbitration agreements stand on equal footing with other contracts and may be invalidated by '[g]eneral contract defenses such as unconscionability.'" Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 47, 470 P.3d 486 (2020). "Washington recognizes two types of unconscionability—substantive and procedural." Tjart v. Smith Barney, Inc., 107 Wn. App. 885, 898, 28 P.3d 823 (2001).

   1. Procedural unconscionability

"Procedural unconscionability has been described as the lack of a meaningful choice, considering all the circumstances surrounding the transaction[.]" Id. "An adhesion contract exists if a standard printed contract was prepared by one party on a 'take it or leave it' basis with no genuine bargaining equality between the parties." Mayne v. Monaco Enters., Inc., 191 Wn. App. 113, 119-20, 361 P.3d 264 (2015). However, adhesion contracts are not per se

11

unconscionable, rather, the "[t]he key inquiry is whether the party lacked meaningful choice." Burnett, 196 Wn.2d at 55. Further, this court has held that employees have "a meaningful choice" when they "could choose employment elsewhere." Romney v. Franciscan Med. Grp., 186 Wn. App. 728, 740, 349 P.3d 32 (2015).

Flynn alleges the arbitration contract is an unlawful adhesion contract because MBAKS effectively denied her an opportunity to understand or discuss the policy by including the Policy with a deluge of other documents. We disagree for three reasons.

First, while Flynn received the arbitration contract alongside numerous other documents, she has not even alleged, with any specificity, that she was under an undue time pressure, or some other burden, to sign the two documents. Second, the Acknowledgment expressly advises the employee to contact their supervisor, human resources, or an attorney with questions. In other words, Flynn had sufficient time to seek the advice of her prospective employer or legal counsel if she so chose. Finally, this court also has held that employees have "a meaningful choice" in agreeing to an arbitration clause because they "could choose employment elsewhere." Romney, 186 Wn. App. at 740. Flynn has not alleged she was foreclosed from choosing employment elsewhere. Therefore, we hold Flynn's procedural unconscionability claim fails.

2. Substantive unconscionability

"Substantive unconscionability 'involves those cases where a clause or term in the contract is alleged to be one-sided or overly harsh[.]'" Tjart, 107 Wn.

App. at 898 (quoting Nelson v. McGoldrick, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). Id. For example, a "contract provision becomes substantively unconscionable when it eliminates otherwise established statutory rights and is one sided, benefiting the contract drafter, is also not prominently set out in the contract, is not negotiated or bargained for, and provides no benefit to the affected party." Tadych v. Noble Ridge Constr., Inc., 200 Wn.2d 635, 645-46, 519 P.3d 199 (2022).

Flynn claims the arbitration contract is substantively unconscionable in three distinct ways. We find each argument unavailing.

First, she argues the arbitration contract places impermissibly vague limits on discovery. In fact, the Policy provides that the "arbitrator will set a limited time period and establish procedures designed to reduce the cost and time for discovery, while allowing the Parties an opportunity, adequate in the sole judgment of the arbitrator, to discover relevant information from the opposing parties about the subject matter of the dispute." This provision grants arbitrators a similar amount of discretion as that given to judges in CR 26(f)(5).[6] Indeed, the Policy provides that the arbitrator will resolve discovery disputes and motions "to the same extent as a competent court of law or equity." Flynn's argument also appears to presuppose the arbitrator will abuse its discretion by impermissibly limiting discovery. However, "[s]peculation about what *might* happen in the arbitral forum

---

[6] CR 26(f)(5) provides that the court "shall enter an order tentatively identifying the issues for discovery purposes, establishing a plan and schedule for discovery, setting limitations on discovery, if any, and determining such other matters . . . as are necessary for the proper management of discovery in the action."

is plainly insufficient to render the agreement to arbitrate unenforceable." Booker v. Robert Half Intern., Inc., 413 F.3d 77, 82 (D.C. Cir. 2005) (alteration in original). Thus, we hold the Policy's discovery provisions are not unconscionable.

Second, Flynn argues the Policy unconscionably allows MBAKS to recover attorney fees in violation of the limitations found in RCW 49.60.030(2).[7] In fact, the Policy states that the arbitrator may award relief "including attorneys' fees, *when permitted by statute* or contract." (Emphasis added). In other words, the attorney fees provision is expressly concomitant with law and, thus, not substantively unconscionable.

Finally, Flynn argues the Policy is substantively unconscionable because it failed to adequately notify her that she was waiving her right to a jury trial. Indeed, "jury trial waivers 'must be voluntary, knowing, and intelligent.'" Adler v. Fred Lind Manor, 153 Wn.2d 331, 360, 103 P.3d 773 (2004) (internal quotation marks omitted) (quoting Godfrey v. Hartford Cas. Ins. Co., 142 Wn.2d 885, 898, 16 P.3d 617 (2001)). And, "by knowingly and voluntarily agreeing to arbitration, a party implicitly waives his right to a jury trial." Id. at 360. Such an agreement, however, would not be knowing and voluntary if, for example, an employer "threatened to fire [the employee] if he refused to sign the agreement despite the fact he raised concerns with its terms or indicated a lack of understanding." Id. at 361.

Here, Flynn's waiver of her right to a jury trial was proper. Unlike in Adler,

---

[7] The WLAD provides that a party "injured by any act in violation of this chapter shall have a civil action in a court of competent jurisdiction to enjoin further violations, or to recover the actual damages sustained by the person, or both, together with the cost of suit including reasonable *attorneys' fees* or any other appropriate remedy." RCW 49.60.030(2) (emphasis added).

Flynn made no specific claim that her employer placed any undue pressure on her or otherwise refused to answer her questions. 153 Wn.2d at 361. Additionally, the Policy repeatedly and plainly warned Flynn of its waiver of her jury trial right.[8]

For these reasons, we hold Flynn knowingly and voluntarily waived her right to a jury trial. Tjart, 107 Wn. App. at 897 ("One who accepts a written contract is conclusively presumed to know its contents and to assent to them.").

### III.     CONCLUSION

We reverse the superior court's denial of MBAKS' motion to compel arbitration and remand for further proceedings. On remand, the court shall determine which of Flynn's claims are within the scope of the arbitration contract, i.e., "what the parties have agreed to arbitrate," Tacoma Narrows Constructors, 138 Wn. App. at 213, and, if necessary, whether the FAA applies.

Díaz, J.

WE CONCUR:

Brumm, J.

Smith, C.J.

---

[8] The Policy repeated notice of the waiver of a jury right includes the following. First, the Policy states in it aims "to make it easier for employees to discuss and resolve their concerns fairly and directly—*without having to resort to a court proceeding*." (Emphasis added). Second, the Policy plainly states that "[a]rbitration *replaces* a court proceeding or *jury trial*." (Emphasis added). Finally, the Acknowledgment's bulleted list above the signature line states the Policy "waives [the signor's] right to resolve covered claims in a court proceeding and, instead, requires arbitration of those claims."