[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 16-16163

_____

D.C. Docket No. 1:15-cv-04460-ELR

BAMBERGER ROSENHEIM, LTD.,
(ISRAEL),

Plaintiff-Appellant,

versus

OA DEVELOPMENT, INC.,
(UNITED STATES),

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 17, 2017)

Before MARTIN, JILL PRYOR, and MELLOY,[*] Circuit Judges.

_____

[*] Honorable Michael J. Melloy, United States Circuit Judge for the Eighth Circuit, sitting by designation.

MELLOY, Circuit Judge:

In this international arbitration dispute, we consider whether courts must defer to an arbitrator's interpretation of a venue provision in a concededly valid agreement to arbitrate. We conclude that questions of arbitral venue, even those arising in international arbitration, are presumptively for the arbitrator to decide. Accordingly, because the arbitrator in the present case arguably interpreted the arbitral-venue provision at issue, we defer to that interpretation. See Oxford Health Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013). We therefore affirm the district court's confirmation of the arbitral award.

**I.**

Appellant Bamberger Rosenheim, Ltd. ("Profimex"),[1] an Israeli company, raises capital for real estate investments. Appellee OA Development, Inc. ("OAD"), an American company incorporated in the state of Georgia, develops real estate. In 2008, Profimex and OAD entered into a Solicitation Agreement. The Solicitation Agreement provided for the arbitration of disputes as follows:

> Any disputes with respect to this Agreement or the performance of the parties hereunder shall be submitted to binding arbitration proceedings conducted in accordance with the rules of the International Chamber of Commerce. Any such proceedings shall take place in Tel Aviv, Israel, in the event the dispute is submitted by OAD, and in Atlanta, Georgia, in the event the dispute is submitted by Profimex.

---

[1] Profimex Ltd. is Bamberger Rosenheim's wholly-owned subsidiary. The parties both refer to the appellant as Profimex, and we will continue that practice.

2

After relations between the parties deteriorated, Profimex commenced arbitration in Atlanta against OAD for breach of contract.  In the same Atlanta arbitration, OAD submitted a counterclaim alleging that Profimex had defamed OAD in statements to Israeli investors.  Profimex objected to the counterclaim's arbitration in Atlanta, arguing "that a 'dispute submitted by OAD' [must] be arbitrated in Tel Aviv, Israel."  The arbitrator, however, determined that venue for the defamation counterclaim was proper in Atlanta, in part, because the "dispute" was submitted by Profimex.  The arbitrator ultimately found Profimex liable on OAD's defamation counterclaim.

Profimex filed a petition to vacate the arbitrator's defamation award in federal district court, and OAD filed a petition to confirm the award.  Profimex raised several grounds for vacatur and defenses against confirmation.  The district court, nevertheless, confirmed the award.

## II.

"We review confirmations of arbitration awards and denials of motions to vacate arbitration awards under the same standard, reviewing the district court's findings of fact for clear error and its legal conclusions *de novo*."  Frazier v. CitiFinancial Corp., LLC, 604 F.3d 1313, 1321 (11th Cir. 2010).  "Because arbitration is an alternative to litigation, judicial review of arbitration decisions is 'among the narrowest known to the law.'"  AIG Baker Sterling Heights, LLC v.

3

Am. Multi-Cinema, Inc., 508 F.3d 995, 1001 (11th Cir. 2007) (quoting Del Casal v. E. Airlines, Inc., 634 F.2d 295, 298 (5th Cir. Unit B Jan. 1981)).  This "limited judicial review . . . 'maintain[s] arbitration's essential virtue of resolving disputes straightaway.'"  Oxford Health Plans, 133 S. Ct. at 2068 (alteration in original) (quoting Hall St. Assocs., LLC v. Mattel, Inc., 552 U.S. 576, 588 (2008)).  "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'"  Id. (quoting Hall St. Assocs., 552 U.S. at 588).

On appeal, Profimex argues that the district court erred in confirming the arbitral award under the New York Convention.  See Convention on the Recognition and Enforcement of Foreign Arbitral Awards, *opened for signature* June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 (entered into force with respect to the United States Dec. 29, 1970) ("New York Convention").  The New York Convention is codified under Chapter 2 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 201–08, and applies to "non-domestic" arbitral agreements and awards. Indus. Risk Insurers v. M.A.N. Gutehoffnungshütte GmbH, 141 F.3d 1434, 1441 (11th Cir. 1998).  Arbitral awards are non-domestic "when one of the parties to the arbitration is domiciled or has its principal place of business outside of the United States."  Id.  Such awards "*must* be confirmed unless appellants can successfully assert one of the seven defenses against enforcement of the award enumerated in

4

Article V of the New York Convention." Id. (emphasis added).  Here, Profimex asserts that "the arbitral procedure was not in accordance with the agreement of the parties." New York Convention, Art. V(1)(d).

Profimex also contends the district court erred in denying its petition to vacate the award under Chapter 1 of the FAA, 9 U.S.C. §§ 1–16, which governs domestic arbitration.  Indus. Risk Insurers, 141 F.3d at 1440.  Under 9 U.S.C. § 10, a court "may make an order vacating the award" provided the petitioner establishes one of several grounds for vacatur.  In the present case, Profimex argues that "the arbitrator[ ] exceeded [his] powers."  9 U.S.C. § 10(a)(4).[2]

We see no reason to analyze Profimex's arguments under the New York Convention or § 10(a)(4) separately.  In both arguments, Profimex asserts the arbitrator improperly applied the arbitral-venue provision in the parties' agreement to arbitrate.  According to Profimex, the venue provision required arbitration of the defamation counterclaim in Tel Aviv, Israel.  By arbitrating the counterclaim in Atlanta, Profimex argues, "the arbitral procedure was not in accordance with the

---

[2] We assume, without deciding, that § 10 applies to the award in the present case. Compare Indus. Risk Insurers, 141 F.3d at 1445–46 (refusing to apply a domestic ground for vacatur and stating that the "[New York] Convention's enumeration of defenses is exclusive"), with Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 20–21 (2d Cir. 1997) (holding that the FAA's domestic grounds for vacatur apply to non-domestic arbitral awards rendered in the United States); see also BG Grp. PLC v. Republic of Arg., 134 S. Ct. 1198, 1208 (2014) (stating an arbitral "award may be 'set aside or suspended by a competent authority of the country in which, or under the law of which, that award was made'" (quoting New York Convention, Art. V(1)(e)).

agreement of the parties," New York Convention, Art. V(1)(d), and "the arbitrator[ ] exceeded [his] powers," 9 U.S.C. § 10(a)(4).

The dispositive issue in the present case is whether this Court must defer to the arbitrator's venue determination.  Ordinarily, "it is up to the parties to determine whether a particular matter is primarily for arbitrators or for courts to decide." BG Grp., 134 S. Ct. at 1206.  However, "[i]f the contract is silent on the matter of who primarily is to decide 'threshold' questions about arbitration, courts determine the parties' intent with the help of presumptions." Id.  "On the one hand, courts presume that the parties intend courts, not arbitrators, to decide what we have called disputes about 'arbitrability.'  These include questions such as 'whether the parties are bound by a given arbitration clause,' or 'whether an arbitration clause in a concededly binding contract applies to a particular type of controversy.'" Id. (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).  "On the other hand, courts presume that the parties intend arbitrators, not courts, to decide disputes about the meaning and application of particular procedural preconditions for the use of arbitration." Id. at 1207.  Procedural questions "are generally for the arbitrators themselves to resolve." Klay v. United Healthgroup, Inc., 376 F.3d 1092, 1109 (11th Cir. 2004).

As suggested by its arguments, Profimex concedes that the arbitration clause in the Solicitation Agreement was binding.  Similarly, Profimex does not dispute

that the arbitration clause applied to the defamation counterclaim. Profimex merely argues that the arbitration was conducted in the wrong arbitral venue. We hold, consistent with at least four other circuits, "that disputes over the interpretation of forum selection clauses in arbitration agreements raise presumptively arbitrable procedural questions." UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 655 (2d Cir. 2011); see also Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP, 645 F.3d 267, 273–74 (4th Cir. 2011); Ridge at Red Hawk, LLC. v. Schneider, 493 F.3d 1174, 1178 & n.3 (10th Cir. 2007); Richard C. Young & Co., Ltd. v. Leventhal, 389 F.3d 1, 5 (1st Cir. 2004). Such clauses determine *where* an arbitration is conducted, "not *whether* there is a contractual duty to arbitrate at all." See BG Grp., 134 S. Ct. at 1207 ("The provision before us is of the . . . procedural[ ] variety. . . . It determines *when* the contractual duty to arbitrate arises, not *whether* there is a contractual duty to arbitrate at all.").

Our review of the arbitrator's venue determination, therefore, is limited to "whether the arbitrator (even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." Oxford Health Plans, 133 S. Ct. at 2068. Here, in deciding whether venue for the counterclaim was proper in Atlanta, the arbitrator engaged with the language of the venue provision and determined that the "dispute" was submitted by Profimex. Thus, "the briefest glance at the

[award] reveals that the arbitrator in this case arguably 'interpreted the [venue provision].'" See S. Commc'ns Servs., Inc. v. Thomas, 720 F.3d 1352, 1359 (11th Cir. 2013) (quoting Oxford Health Plans, 133 S. Ct. at 2068). "The arbitrator's construction holds, however good, bad, or ugly." Oxford Health Plans, 133 S. Ct. at 2071.

Profimex, primarily relying on three cases, nevertheless argues that the arbitrator's interpretation is not entitled to deference. We disagree. First, our decision in Sterling Financial Investment Group, Inc. v. Hammer, 393 F.3d 1223 (11th Cir. 2004), does not stand for the proposition that arbitral venue is a question for the courts to resolve independently. In that case, we simply held "that a federal district court . . . has jurisdiction to enforce a forum selection clause in a valid arbitration agreement that has been disregarded by the arbitrators." Id. at 1225. Indeed, by allowing arbitration to proceed in Texas, the arbitrator in Sterling Financial clearly disregarded an unambiguous venue provision that only provided for arbitration in Florida. See id. at 1224. We did not hold that courts should review arbitral-venue provisions de novo; in Sterling Financial, it could not be said that the arbitrator even arguably interpreted the parties' contract.

Second, to the extent it is indistinguishable, we decline to follow Polimaster Ltd. v. RAE Systems, Inc., 623 F.3d 832 (9th Cir. 2010). In Polimaster, a divided panel of the Ninth Circuit, applying the New York Convention, held that an

arbitrator incorrectly applied an arbitral-venue provision somewhat similar to the provision in the present case. Id. at 837.[3] The panel's holding rested on its conclusion that the provision was "not ambiguous." Id. The dissent, however, concluded that the provision was susceptible to more than one reasonable interpretation and that the arbitrator's interpretation was thus entitled to deference. Id. at 844 (Clifton, J., dissenting). Here, by contrast, we cannot say that the venue provision is reasonably susceptible to only one interpretation. And, in any event, we note that the Polimaster court failed to engage in any analysis as to whether arbitral venue is a question of arbitrability.

Finally, the international character of the arbitration does not change our calculus. Profimex argues that, in international arbitration, "disputes regarding forum selection . . . are more akin to 'questions of arbitrability' than procedural questions arising out of the arbitration." To support this contention, Profimex points to Scherk v. Alberto-Culver Co., 417 U.S. 506 (1974). In Scherk, the Supreme Court stated that "[a] contractual provision specifying in advance the forum in which disputes shall be litigated and the law to be applied is . . . an almost indispensable precondition to achievement of the orderliness and predictability essential to any international business transaction." Id. at 516. But Scherk did not

___

[3] The contract provided that arbitration was to be conducted "at the defendant's site," i.e., "the geographical location of the defendant's principal place of business." Polimaster, 623 F.3d at 834. "[R]easoning that the contract did not specify where counterclaims should be brought," the arbitrator, much like the present case, allowed a counterclaim to be arbitrated in the same country as the initial claim. Id. at 835.

concern the choice between different arbitral forums; rather, <u>Scherk</u> concerned whether a particular dispute should be resolved in arbitration or in court. <u>Id.</u> at 509–10.

And, while venue may impact the rules and laws applicable in international arbitration, <u>see, e.g.</u>, <u>Karaha Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara</u>, 364 F.3d 274, 290–91 (5th Cir. 2004), we see no reason why arbitral venue must be a question *presumptively* reserved to the courts. <u>See Howsam</u>, 537 U.S. at 83 ("[O]ne might call any potentially dispositive gateway question a 'question of arbitrability' . . . . The [Supreme] Court's case law, however, makes clear that . . . the phrase 'question of arbitrability' has a far more limited scope."). If parties do not want an arbitrator to resolve arbitral-venue disputes, they "may agree to limit the issues they choose to arbitrate." <u>Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.</u>, 559 U.S. 662, 683 (2010).[4]

**AFFIRMED.**

---

[4] Profimex also argues the arbitrator erred in admitting certain deposition testimony. We reject this argument. <u>See</u> <u>Rosensweig v. Morgan Stanley & Co., Inc.</u>, 494 F.3d 1328, 1333 (11th Cir. 2007) ("In making evidentiary determinations, arbitrators are not required to 'follow all the niceties observed by the federal courts,' but they must give the parties a fundamentally fair hearing." (quoting <u>Tempo Shain Corp. v. Bertek, Inc.</u>, 120 F.3d 16, 20 (2d Cir. 1997))); <u>id.</u> at 1333–34 (upholding arbitrator's evidentiary decision where there was at least one "reasonable basis" for the decision); <u>see also</u> <u>Ministry of Def. & Support for the Armed Forces of the Islamic Republic of Iran v. Cubic Def. Sys., Inc.</u>, 665 F.3d 1091, 1096–97 (9th Cir. 2011) (noting that the New York Convention's public-policy defense "applies only when confirmation or enforcement of a foreign arbitration award would violate the forum state's most basic notions of morality and justice" (internal quotation marks and citation omitted)).