# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| ANTHONY HEALY, an individual,<br><br>               Petitioner,<br><br>               v.<br><br>SEATTLE RUGBY, LLC, a Washington<br>Limited Liability Company; and ADRIAN<br>BALFOUR, individually and together<br>with his marital community, if any,<br><br>               Respondent. | DIVISION ONE<br><br>No. 79658-5-I<br><br>PUBLISHED OPINION |

DWYER, J. — This is a discretionary review of an order compelling arbitration to resolve an employment dispute. Seattle Rugby, LLC and its chief executive officer (CEO), Adrian Balfour, agreed to employ Anthony Healy as head coach of the Seattle Seawolves, a United States Major League Rugby team. After Healy, a Canadian, was unable to obtain a necessary visa, his employment was terminated. He brought suit in King County Superior Court. This review arises from an order, upon the motion of Seattle Rugby and Balfour, compelling arbitration in New York.

Healy asserts that a governing law clause in the employment agreement conflicts with the agreement's arbitration clause, rendering the arbitration clause ambiguous and, therefore, unenforceable. We disagree. The terms of the agreement clearly require the parties to arbitrate disputes. However, the superior

court's order must be modified to provide that the proper venue for the arbitration is a matter for the arbitrator to determine. Venue is not a gateway dispute to be decided by the superior court.

I

Seattle Rugby, LLC, a Washington limited liability company, owns and operates Seattle's United States Major League Rugby team, the Seattle Seawolves.[1] Adrian Balfour is the CEO of Seattle Rugby. In September 2017, Balfour and Seattle Rugby hired Anthony Healy, a Canadian citizen residing in Victoria, British Columbia, to serve as head coach of the Seawolves. Balfour, in his capacity as CEO of Seattle Rugby, presented Healy with an employment agreement, which both parties executed on September 25, 2017. The agreement included the following arbitration clause:

> 9) <u>Arbitration of Controversies</u>. Any claim or controversy that arises out of or relates to this Agreement, or the breach of this Agreement, shall be settled by arbitration in New York State under the rules then in effect of the American Arbitration Association. All claims shall be determined by one arbitrator. All arbitration hearings shall commence within ninety (90) days of the demand for arbitration and close within ninety (90) days of commencement and the award of the arbitrator(s) shall be issued within thirty (30) days of the close of the hearing. However, the arbitrator(s), upon showing good cause, may extend the commencement of the hearing for up to an additional sixty (60) days. The arbitrator(s) shall provide a concise written statement of reasons for the award. Judgment upon the award rendered by arbitration may be entered in any court possessing jurisdiction over the parties.

Additionally, the agreement included a governing law clause, listed as subsection (c) under section 10, entitled "<u>General Provisions</u>":

---

[1] The facts set forth are derived from the parties' pleadings.

(c) <u>Governing Law</u>. This Agreement shall be construed under and governed by the laws of the State of Washington. Company and Coach agree that all actions arising directly or indirectly out of this Agreement shall be litigated only in the State of Washington and the parties hereto consent to that jurisdiction and venue.

Healy's term of employment was to begin January 1, 2018. With the assistance of Seattle Rugby, Healy applied for an O-1 work visa. While awaiting the issuance of the visa, Healy worked for several months to "set up" the team, traveling frequently to Seattle. During this time, Healy expressed to Balfour that it was financially difficult for him to be traveling to and from Canada without any income. In response, Balfour wrote Healy's wife a check for $7,500. In March 2018, Healy's visa application was denied by the United States Citizen and Immigration Services. Approximately one week later, Healy was informed that he would no longer be able to serve as head coach of the Seattle Seawolves and that his employment was terminated.

In June 2018, Healy filed a complaint in King County Superior Court against Seattle Rugby and Balfour, alleging breach of contract, failure to pay wages, and willful withholding of wages. On August 8, Seattle Rugby and Balfour filed their answer and asserted affirmative defenses. Balfour also filed a counterclaim alleging that Healy had breached the agreement by failing to repay a personal loan of $7,500. The parties dispute the relationship between the check and Healy's employment. Healy claims that it was a "lump-sum payment" for his work "set[ting] up" the team. Balfour asserts that it was a personal loan that "had nothing to do with Plaintiff's employment by Seattle Rugby."

After twice giving notice of their intent to do so, Balfour and Seattle Rugby filed a motion to compel arbitration on January 28, 2019. Healy opposed the motion, arguing that (1) the governing law provision of the agreement requires the dispute to be litigated in Washington, (2) Seattle Rugby and Balfour waived the right to arbitrate by engaging in litigation, and (3) the arbitration provision is unconscionable because it requires Healy to arbitrate in New York.

The superior court granted Seattle Rugby and Balfour's motion to compel arbitration and stayed proceedings pending the completion of arbitration in New York. Healy sought discretionary review of that order pursuant to RAP 2.3(b)(2). Our commissioner granted discretionary review solely on the issue of whether the superior court erred by compelling arbitration in New York in light of an apparent conflict between the arbitration and governing law clauses of the agreement.

II

A

We review de novo a trial court's decision to compel or deny arbitration. Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 46, 470 P.3d 486 (2020). Arbitration is a matter of contract. Accordingly, parties cannot be compelled to arbitrate unless they agreed to do so. Weiss v. Lonnquist, 153 Wn. App 502, 510, 224 P.3d 787 (2009) (citing AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648, 106 S. Ct. 1415, 89 L. Ed. 2d 648 (1986)); see also RCW 7.04A.070(1) (providing that a court shall order parties to arbitrate upon "a showing [of] an agreement to arbitrate").

The purpose of contract interpretation is to ascertain the intent of the parties. Roats v. Blakely Island Maint. Comm'n, Inc., 169 Wn. App. 263, 274, 279 P.3d 943 (2012). Washington courts "follow the objective manifestation theory of contracts." Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005). Under this approach, courts "focus on the agreement's objective manifestations to ascertain the parties' intent." Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227 (2016). When considering the language of a written agreement, we "impute an intention corresponding to the reasonable meaning of the words used." Hearst Commc'ns, Inc., 154 Wn.2d at 503 (citing Lynott v. Nat'l Union Fire Ins. Co. of Pittsburgh, 123 Wn.2d 678, 684, 871 P.2d 146 (1994)).

The intent of the parties may be discovered from "'the contract as a whole, the subject matter and objective of the contract, all the circumstances surrounding the making of the contract, the subsequent acts and conduct of the parties to the contract, and the reasonableness of respective interpretations advocated by the parties.'" Tanner Elec. Coop. v. Puget Sound Power & Light Co., 128 Wn.2d 656, 674, 911 P.2d 1301 (1996) (internal quotation marks omitted) (quoting Scott Galvanizing, Inc. v. Nw. EnviroServices, Inc., 120 Wn.2d 573, 580-81, 844 P.2d 428 (1993)).

When contract provisions conflict, we will harmonize them to the extent possible. Kut Suen Lui v. Essex Ins. Co., 185 Wn.2d 703, 710, 375 P.3d 596 (2016). The purpose of this "harmonization" is to interpret the agreement in a manner that gives effect to all of the contract's provisions. Nishikawa v. U.S.

5

Eagle High, LLC, 138 Wn. App. 841, 850-51, 158 P.3d 1265 (2007). When the terms of an agreement truly conflict and, thus, harmonizing them is impossible, courts must "give effect to the manifest intent of the parties." Green River Valley Found., Inc. v. Foster, 78 Wn.2d 245, 249, 473 P.2d 844 (1970) (citing Starr v. Mut. Life Ins. Co. of New York, 41 Wash. 228, 83 P.116 (1905)). Accordingly, effect is given to that provision which more nearly effectuates the purpose of the entire contract. Vance v. Ingram, 16 Wn.2d 399, 416, 133 P.2d 938 (1943). A contract term is ambiguous only when, viewed in context, two or more meanings are reasonable. GMAC v. Everett Chevrolet, Inc., 179 Wn. App. 126, 135, 317 P.3d 1074 (2014). When multiple meanings are reasonable, which meaning reflects the parties' intent is a question of fact. GMAC, 179 Wn. App at 135.

B

Here, the two provisions at issue each contain multiple terms. Together, they address (1) who decides disputes, (2) what law applies, (3) what state's court has ultimate jurisdiction, and (4) where disputes should be resolved. Neither clause speaks to all four. The arbitration clause provides that disputes will be decided by one arbitrator, under the rules of the American Arbitration Association, and in New York. The governing law clause provides that Washington law governs, and that jurisdiction and venue are in Washington. Because the arbitration clause contains an agreement to arbitrate, and no clear contrary indication is found elsewhere in the agreement, we conclude that the terms of the agreement include an agreement to arbitrate.

Healy argues that the word "litigated," used in the governing law provision, evidences a conflict as to who the agreement designates as decision-maker. However, he is mistaken as to the narrow meaning he imbues to the word "litigated."

To "litigate" is to "engage in legal proceedings." AMERICAN HERITAGE DICTIONARY 1051 (3d ed. 1992); see also WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1322 (defining "litigation" as "the practice of taking legal action"). Arbitration is a legal proceeding provided for and regulated by statute. Washington's version of the uniform arbitration act is codified in Title 7 RCW, "Special Proceedings and Actions." See chapter 7.04A RCW. Arbitration is a specific mode of litigation, in which an arbitrator, defined by statute as an "individual appointed to render an award in a controversy between persons who are parties to an agreement to arbitrate," RCW 7.04A.010(2), determines the disposition of the claims at issue. Certainly, litigation can occur before a judge in a courtroom, but the term is not limited to a designation of only courtroom proceedings.

Consistent with this view, many jurisdictions have recognized that the so-called "litigation privilege" includes statements made in arbitration. See, e.g., Rolon v. Henneman, 517 F.3d 140, 145 (2d Cir. 2008) (witness entitled to absolute immunity for testimony at arbitration); Moore v. Conliffe, 7 Cal. 4th 634, 651, 29 Cal. Rptr. 2d 152, 871 P.2d 204 (1994) (expert witness who testified at deposition held in connection with private arbitration proceeding immunized against tort claims by virtue of "litigation privilege"); Odyniec v. Schneider, 322

7

Md. 520, 535, 588 A.2d 786 (1991) (statements of expert witness in health claims arbitration proceeding absolutely privileged because proceeding was equivalent of a judicial proceeding). Similarly, the First Amendment right to public access at litigation proceedings includes arbitration proceedings under certain circumstances. Delaware Coal. for Open Gov't v. Strine, 733 F.3d 510, 521 (3d Cir. 2013).

Thus, there is no conflict between the terms, "litigation" and "arbitration." One is broader than the other. Here, the agreement to the narrowest meaning controls. Similarly, because there is no conflict in the agreement as to what type of decision-maker should preside, it is clear that the parties agreed that disputes would be decided by an arbitrator. Accordingly, we affirm the order compelling arbitration.

C

The parties dispute which venue provision governs the agreement— whether venue is properly in New York State, as indicated by the arbitration provision and ordered by the superior court, or in Washington, as indicated by the governing law clause. Because venue is a not a gateway issue, this dispute must be resolved by the arbitrator, not the superior court.

Courts may resolve the threshold question of whether a claim is arbitrable as a gateway dispute. Romney v. Franciscan Med. Grp., 199 Wn. App 589, 595, 399 P.3d 1220 (2017) (citing Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 154 L. Ed. 2d 491 (2002)); accord Hill v. Garda CL Nw., Inc., 179 Wn.2d 47, 53, 308 P.3d 635 (2013). This "avoids the risk of forcing

parties to arbitrate a matter that they may well not have agreed to arbitrate." Howsam, 537 U.S. at 83-84.

However, when a dispute falls within a valid arbitration agreement, procedural questions, which "'grow out of the dispute and bear on its final disposition,'" are decided by the arbitrator. Howsam, 537 U.S. at 84 (quoting John Wiley & Sons, Inc. v. Livingston, 376 U.S. 543, 557, 84 S. Ct. 909, 11 L. Ed. 2d 898 (1964)); Romney, 199 Wn. App at 595. A dispute over venue presents an issue of where arbitration is to occur, not whether there is a contractual duty to arbitrate. Bamberger Rosenheim, Ltd. v. OA Dev., Inc., 862 F.3d 1284, 1287-88 (11th Cir. 2017); UBS Fin. Servs., Inc. v. W. Va. Univ. Hosps., Inc., 660 F.3d 643, 655 (2d Cir. 2011); Cent. W. Va. Energy, Inc. v. Bayer Cropscience LP, 645 F.3d 267, 273-74 (4th Cir. 2011); Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1178 n.3 (10th Cir. 2007); Richard C. Young & Co. v. Leventhal, 389 F.3d 1, 5 (1st Cir. 2004).

Here, because we have determined that there is a valid agreement to arbitrate, there is no risk that parties will be forced to arbitrate "a matter that they may well not have agreed to arbitrate." Howsam, 537 U.S. at 83-84. We hold that when there is a valid agreement to arbitrate, a dispute over venue is not a gateway issue. Thus, it is appropriately determined by the arbitrator.

Accordingly, on remand, the superior court's order must be modified to order that arbitration will take place with venue to be determined by the arbitrator.[2]

Affirmed as modified.

_____
Dwyer, J.

WE CONCUR:

_____    _____
Chun, J.                           Mann, C.J.

---

[2] Washington law will govern the arbitration proceeding and the superior courts of Washington will have ultimate authority to confirm or not confirm the arbitrator's decision, all in accordance with the terms of the agreement.