**NOTICE:  SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

FILED
1/20/2022
Court of Appeals
Division I
State of Washington

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| AUSTIN CORNELIUS, an individual, | No. 82264-1-I |
| Respondent, | |
| v. | ORDER GRANTING MOTION TO PUBLISH |
| ALPHA KAPPA LAMBDA, a national organization, ETA CHAPTER OF ALPHA KAPPA LAMBDA, a Washington corporation d/b/a ALPHA KAPPA LAMBDA, and ETA OF ALPHA KAPPA LAMBDA, a Washington corporation, | |
| Appellants, | |
| WASHINGTON STATE UNIVERSITY, a public university, | |
| Defendant. | |

Appellants Alpha Kappa Lambda and Eta of Alpha Kappa Lambda moved to publish the opinion filed on November 8, 2021. Respondent Austin Cornelius has filed an answer. A panel of the court has reconsidered its prior determination not to publish the opinion and has found that it is of precedential value and should be published; now, therefore, it is hereby

ORDERED that the written opinion, filed on November 8, 2021, shall be published and printed in the Washington Appellate Reports.

FOR THE COURT:

_____
Judge

For the current opinion, go to https://www.lexisnexis.com/clients/WAreports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| AUSTIN CORNELIUS, an individual, | No. 82264-1-I |
| Respondent, | |
| v. | DIVISION ONE |
| ALPHA KAPPA LAMBDA, a national organization, ETA CHAPTER OF ALPHA KAPPA LAMBDA, a Washington corporation d/b/a ALPHA KAPPA LAMBDA, and ETA OF ALPHA KAPPA LAMBDA, a Washington corporation, | PUBLISHED OPINION |
| Appellants, | |
| WASHINGTON STATE UNIVERSITY, a public university, | |
| Defendant. | |

CHUN, J. — Austin Cornelius sued the national fraternity Alpha Kappa Lambda and its local chapter, Eta of Alpha Kappa Lambda, (collectively "AKL") for negligence. AKL moved to compel arbitration under an arbitration agreement (the Agreement) Cornelius signed when he joined the fraternity. The trial court denied the motion, deeming the Agreement procedurally unconscionable. AKL appeals, contending that the Agreement is not procedurally unconscionable and covers all of Cornelius's claims. In the alternative, AKL requests remand for an evidentiary hearing and limited discovery on the circumstances surrounding the

Citations and pin cites are based on the Westlaw online version of the cited material.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

execution of the Agreement. For the reasons discussed below, we reverse and remand, and the trial court may address whether to allow any limited discovery.

## I. BACKGROUND

Cornelius began attending Washington State University (WSU) in August 2017 when he was 18 years old. He participated in "rush week" and received "bids"—or invitations to join—from at least five fraternities. He decided to "pledge" Alpha Kappa Lambda, a national fraternity with a local chapter, Eta, at WSU.

Cornelius attended his first AKL event on August 20, 2017. He alleges that AKL members hazed him during this event, leading to his hospitalization for "acute alcohol intoxication."

As for the arbitration agreement at issue, Cornelius claims as follows: On August 28, 2017, during a fraternity study session, AKL members instructed him to create a profile on the fraternity's online membership portal. He did so. On August 30, 2017, during another study session, AKL members directed Cornelius to "sign off" on "some paperwork" on the online portal. The pledges "were rushed through this process and told [they] needed to complete the approval right there at the study tables session before [they] left for the evening." The senior members "never [gave] any explanation as to what specifically [the pledges] were signing, what the agreements entailed, or even a summary of what was contained in the agreements." The pledges "were not told or encouraged to spend more than about a minute or two at most to review the agreements before

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

No. 82264-1-I/3

checking the box." The senior members told the pledges that if they did not "sign off" on the agreements, they "could not pledge the fraternity and would not be allowed at the house." "There was no opportunity to ask questions, seek clarity, review, or otherwise get a meaningful understanding of what it was [the pledges] were being asked to approve."

The portal contained a four-page document called the "New Member Agreements" (NMA). On the last page of the NMA is the Agreement, which is titled "AKL CLAIM AND DISPUTE RESOLUTION PROGRAM" in bold lettering. It includes the following provision: "If you are unable to resolve a claim or dispute arising out of your membership or participation in any Fraternity of Alpha Kappa Lambda-related activity, under the terms of the Program the claim or *dispute will be submitted to binding arbitration instead of through the courts.*" (Emphasis added.) The Agreement then provides in bold lettering:

> YOUR DECISION TO JOIN OR ACCEPT MEMBERSHIP OR CONTINUE YOUR CURRENT MEMBERSHIP IN THE FRATERNITY . . . MEANS YOU HAVE AGREED TO AND ARE BOUND BY THE TERMS OF THIS PROGRAM AS CONTAINED IN THE PLAN DOCUMENT AND RULES, A COMPLETE COPY OF WHICH IS AVAILABLE FOR YOU TODAY, AND CAN BE FOUND ON THE ALPHA KAPPA LAMBDA NATIONAL WEBSITE.

Finally, the Agreement provides,

> [Y]ou and the Fraternity of Alpha Kappa Lambda are both *waiving all rights which either may have with regard to trial by jury* for personal injury, property damage, contract or any other related matters in state or federal court. This Plan covers any legal or equitable claim for personal injury, property damage, equity or breach of contract, arising out of any tort, statute, contract or law.

(Emphasis added.) The Agreement incorporates the "Claim and Dispute Resolution Plan and Rules" (the Plan) by reference and informs that the Plan is

3

No. 82264-1-I/4

available on the fraternity's website. The Plan provides that the Federal Arbitration Act[1] (FAA) applies to the Agreement.

Cornelius signed the NMA on August 30. The online portal provider's records show that Cornelius created his profile on August 28, 2017. It also shows that he logged onto his profile around 11:20 p.m. on August 30 and signed the NMA around 11:32 p.m. the same night. AKL allegedly continued to haze Cornelius as a pledge until October 2017.

On July 30, 2020, Cornelius sued AKL for negligence. AKL moved to compel arbitration and for a stay of proceedings. Cornelius opposed the motion, claiming that the Agreement does not apply to claims arising from events predating its execution and that the Agreement is procedurally unconscionable. During a hearing on the matter, AKL requested an evidentiary hearing in the alternative. The trial court denied AKL's motion to compel arbitration. It determined that an evidentiary hearing was unnecessary and concluded that the Agreement was procedurally unconscionable because Cornelius lacked a "meaningful choice regarding his entry into the agreement." AKL appeals.

## II. ANALYSIS

AKL says the trial court erred by denying its motion to compel arbitration because the Agreement is not procedurally unconscionable and covers the claims arising from events before the execution of the Agreement.[2] Cornelius

---

[1] 9 U.S.C. §§1–16.

[2] AKL says that the contract defense of duress does not apply here. But Cornelius does not argue duress on appeal nor did the trial court deny arbitration on such grounds. Thus, we do not address the issue.

No. 82264-1-I/5

responds that the Agreement is procedurally unconscionable and does not apply retroactively to all of his claims. Because we cannot resolve the issue of procedural unconscionability on the record before us, we remand for an evidentiary hearing.

We review de novo a trial court's denial of arbitration. Burnett v. Pagliacci Pizza, Inc., 196 Wn.2d 38, 46–47, 470 P.3d 486 (2020). "Unconscionability is also a question of law we review de novo." McKee v. AT&T Corp., 164 Wn.2d 372, 383, 191 P.3d 845 (2008).

"[T]he party moving to compel arbitration must make a threshold showing that a written agreement to arbitrate exists and that the contract at issue involves interstate commerce."[3] Walters v. A.A.A. Waterproofing, Inc., 120 Wn. App. 354, 358, 85 P.3d 389 (2004), review granted, cause remanded, 153 Wn.2d 1023, 108 P.3d 1227 (2005). Once that party meets that threshold, the burden shifts to the party opposing arbitration "to show that the arbitration clause is unenforceable." Gandee v. LDL Freedom Enters., Inc., 176 Wn.2d 598, 602–03, 293 P.3d 1197 (2013).

The parties do not dispute that the FAA governs here. The FAA provides that written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. "When the validity of an agreement to arbitrate is challenged, courts apply ordinary state contract law." McKee, 164 Wn.2d at 383.

---

[3] Cornelius contends that this language from Walters shows that AKL bears the burden to prove that a legally binding and valid arbitration agreement exists and covers all of his claims; but it clearly does not support such a contention.

5

"General contract defenses such as unconscionability may invalidate arbitration agreements." Id.; see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 475–76, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989) ("in applying general state-law principles of contract interpretation to the interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." (citations omitted)). "[B]oth state and federal law strongly favor arbitration and require all presumptions to be made in favor of arbitration." Gandee, 176 Wn.2d at 602–03. When reviewing a motion to compel arbitration, we consider "(1) 'whether the arbitration agreement is valid,' and (2) 'whether the agreement encompasses the claims asserted.'" Cox v. Kroger Co., 2 Wn. App. 2d 395, 404, 409 P.3d 1191 (2018) (quoting Wiese v. CACH, LLC, 189 Wn. App. 466, 474, 358 P.3d 1213 (2015)).

A. Procedural Unconscionability

"Procedural unconscionability is 'the lack of meaningful choice, considering all the circumstances surrounding the transaction.'" Zuver v. Airtouch Commc'ns, Inc., 153 Wn.2d 293, 303, 103 P.3d 753 (2004) (quoting Nelson v. McGoldrick, 127 Wn.2d 124, 131, 896 P.2d 1258 (1995)). To determine whether an agreement is procedurally unconscionable, courts look at "(1) the manner in which the contract was entered, (2) whether [the signatory] had a reasonable opportunity to understand the terms of the contract, and

6

(3) whether the important terms were hidden in a maze of fine print." Burnett, 196 Wn.2d at 54. "'[T]hese three factors [should] not be applied mechanically without regard to whether in truth a meaningful choice existed.'" Zuver, 153 Wn.2d at 303 (second alteration in original) (quoting Nelson, 127 Wn.2d at 131).

An arbitration agreement may be procedurally unconscionable if it is an adhesion contract. Burnett, 196 Wn.2d at 54. Adhesion contracts are standard-form contracts presented on a "take it or leave it basis" by a party with disproportionately more bargaining power. Zuver, at 305 (internal quotation marks omitted) (quoting Yakima County (W. Valley) Fire Prot. Dist. No. 12 v. City of Yakima, 122 Wn.2d 371, 393, 858 P.2d 245 (1993)). But "[a]n adhesion contract is not necessarily procedurally unconscionable." Burnett, 196 Wn.2d at 54–55. "The key inquiry is whether the party lacked meaningful choice." Id.

1. The manner in which Cornelius entered the Agreement and whether he had a reasonable opportunity to understand the terms of the Agreement

Cornelius contends that circumstances surrounding his entry into the Agreement deprived him of a meaningful opportunity to read and understand the Agreement. An evidentiary hearing is necessary to assess his claims.

a. Time to consider the Agreement

AKL contends that Cornelius had access to the NMA when he first created his profile on August 28. While Cornelius does not appear to dispute that he may have had access to the NMA starting on August 28, he contends he did not know of its existence until August 30.

7

Assuming that Cornelius did not know about the NMA until August 30, it is still unclear how much time he had to review and sign it that day. Cornelius says the senior members "rushed" him through the process and that the pledges were not "encouraged" to spend more than "a minute or two" reviewing the NMA. But he does not say that the senior members limited his review to two minutes. And the online portal provider's records show that he signed onto his profile for about 12 minutes before he signed the NMA.

Without more information, it is unclear whether how long Cornelius had to consider the Agreement supports a determination that the Agreement is procedurally unconscionable. In Tjart v. Smith Barney, Inc., this court saw no procedural unconscionability although the plaintiff executed the arbitration agreement "relatively rapidly." 107 Wn. App. 885, 890, 896–97, 28 P.3d 823 (2001). But Tjart does not clarify the term "relatively rapidly." AKL also relies on Hoober v. Movement Mortg., LLC, in which the court noted concern about pressure the employer placed on the employee to quickly sign the agreement, leading her to return the forms the same day she received them, but still concluded that there was no procedural unconscionability. 382 F. Supp. 3d 1148, 1154, 1157 (W.D. Wash. 2019) (applying Washington law).[4] But here the record is unclear whether Cornelius had more than one day, or much less than one day, to consider the Agreement.

---

[4] Neither Hoober nor other federal case law we cite in this opinion constitute binding precedent.

b. Explanation of the Agreement

Cornelius says that the senior members told him to just "sign off" without explaining what he was signing or what the documents contained. But this court rejected a similar argument in Tjart when the plaintiff complained that no one explained to her what types of claims would be covered by the arbitration agreement. 107 Wn. App. at 890, 896–97. Cornelius cites no law requiring an explanation. This contention does not support a determination of procedural unconscionability.

c. Questions about the Agreement

Cornelius says that he had no opportunity to ask questions about the agreement. Relying on Hoober, AKL responds that because Cornelius does not claim that he tried to ask questions, he cannot claim the Agreement is procedurally unconscionable. 382 F. Supp. 3d at 1156–57 ("neither Plaintiff argues that they asked questions" in rejecting a claim of procedural unconscionability).[5] Because Cornelius does not explain how he lacked an opportunity to ask questions, further factual development is needed to determine whether he had a reasonable opportunity to understand the terms of the Agreement.

---

[5] See also Simpson v. Inter-Con Sec. Sys., Inc., No. C12-1955RAJ, 2013 WL 1966145, at *3 (W.D. Wash. May 10, 2013) ("Although Plaintiffs contend they had little time to consider the agreement, they do not contend that they attempted to consider it, attempted to ask questions about it, or even that they would have asked questions if they had more time. The agreement is not procedurally unconscionable."); see GR 14.1(c).

9

2. Whether important terms were hidden in the Agreement

Citing Burnett, Cornelius contends that because he did not see the Plan before signing the NMA, which incorporated the Plan by reference, the essential terms of the Agreement were hidden. Our Supreme Court held in Burnett that an employment contract that incorporated an arbitration policy by reference was procedurally unconscionable. 196 Wn.2d at 57. The employment contract "did not mention arbitration." Id. at 56–57. After Burnett signed the employment contract, he received an employee handbook containing the arbitration policy but "the arbitration policy was not identified in the handbook's table of contents." Id. The court held that "because essential terms were hidden and Burnett had no reasonable opportunity to understand the arbitration policy before signing the employment contract, the manner in which the contract was entered demonstrated that Burnett lacked a meaningful choice regarding the arbitration policy." Id. at 57.

Here, on the record before us, the essential terms do not appear to have been hidden. The Agreement appears on the fourth and final page of the NMA. See Tjart, 107 Wn. App. at 898–99 ("the arbitration provision was obvious in the fairly short contract"). The Agreement is titled "AKL CLAIM AND DISPUTE RESOLUTION PROGRAM" and states that claims and disputes arising out of membership or fraternity-related activities will be submitted to arbitration and that both parties are waiving their right to go to court. See Romney v. Franciscan Med. Grp., 186 Wn. App. 728, 740, 349 P.3d 32 (2015) ("arbitration clause is

10

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

understandable and is printed in the same size font as the rest of the agreement under a bolded heading").

And in <u>Burnett</u>, the plaintiff did not receive the handbook containing the arbitration clause until after he signed the document incorporating it. Cornelius contends this case is similar because he did not recall seeing the Plan, which discusses the arbitration rules in detail, before he signed the NMA. But here, the arbitration clause itself was in the NMA, and while he says that it is "unclear" whether he had access to the Plan before signing, he does not contend he lacked such access. The Agreement states the Plan is on AKL's website. <u>See</u> <u>Tjart</u> 107 Wn. App. at 896–99 (holding that, though the plaintiff complained that she never received a copy of the rules referred to in the agreement, the agreement was not procedurally unconscionable).

3. Adhesion contract

a. Offered on a "take it or leave it" basis

Cornelius says that there was no opportunity to negotiate terms. He says the senior members told him that if he did not sign the Agreement, he could not continue to be in the fraternity. AKL does not dispute this. Instead, it correctly emphasizes that whether the Agreement is an adhesion contract is not determinative. <u>See</u> <u>Burnett</u>, 196 Wn.2d at 54–55.

AKL relies on <u>Hoober</u> and <u>Romney</u> to contend that this adhesion contract was not procedurally unconscionable. In <u>Hoober</u>, the court noted that the plaintiffs would lose their new job opportunity if they refused to sign the

11

arbitration agreement, but still determined the agreement was enforceable. 382 F. Supp. 3d at 1157. The court also noted that "understanding that the terms could not be changed is substantively different from asking questions about the terms and being refused an answer and has not been found in Washington courts to be a basis for procedural unconscionability." Id. at 1156. And in Romney, this court determined that the plaintiffs had a meaningful choice in agreeing to an arbitration clause in an adhesion employment contract because they "could choose employment elsewhere." 186 Wn. App. at 740.

Given the foregoing, the fact that Cornelius could not negotiate the terms of the Agreement is not determinative. But his contention that, if he did not agree to its terms, he would be unable to join the fraternity and not be allowed back to the house may suggest a lack of meaningful choice.

> b. Unequal bargaining power

Cornelius says a disparity exists in bargaining power between the parties. He made the same claim below, without explaining the dynamics leading to such a disparity. During the hearing, the trial court noted:

> So that, and coupled with the fact that you have a plaintiff who is 18/19 years old -- and I understand, obviously, that he was college bound and that he was a pre-med student, but if to sort of continue the examination as to the totality of the circumstances or the true context of how this all occurred, you know, even though I never rushed a fraternity, I'm well aware of what goes on during Rush, and I, again, acknowledge that not all fraternities are created equal and not all fraternities behave in the same way, but there's clearly a disparity of power between the fraternity and the pledge.
>
> You know, the fraternities, I think -- I believe hold the overwhelming advantage because they generally know incoming freshman are desiring a group setting, a social setting to which they can belong, whether it's for just fitting in, assimilation purposes,

whether it's to have cheaper housing or access to housing, whether it's because of peer pressure to have a good social life, there's a clear, I think, disparity in the relationship between pledges and fraternities which I would argue is how these types of situations arise.

In its written order, the court similarly found a "clear disparity" in bargaining power.

The record does not appear to support this finding. It appears to be based instead on the trial court's personal experience.[6] ER 605 prohibits a judge from inserting their "own personal experience into the decision-making process." In re Est. of Hayes, 185 Wn. App. 567, 599, 342 P.3d 1161 (2015). Cornelius contends that his claim below that no equality of bargaining power existed and his statement that he sought to join a fraternity to make friends render this finding proper. But these contentions alone do not establish a disparity in bargaining power. Further evidentiary development is needed to assess the disparity in bargaining power in this particular case.

4. Meaningful choice

The core inquiry is whether Cornelius had a meaningful choice in entering the Agreement. We cannot make this determination based on the record before us. AKL requests that if we are not inclined to order arbitration, we remand for an evidentiary hearing.[7] We agree an evidentiary hearing is necessary. See

---

[6] AKL claims the trial court violated Section 2.2 of the Code of Judicial Conduct but offers no argument on the issue. Thus, we do not address the claim. See Prostov v. Dep't of Licensing, 186 Wn. App. 795, 823, 349 P.3d 874 (2015) ("A party abandons assignments of error unsupported by argument and will not be considered on appeal.").

[7] AKL also requests that we order a limited deposition of Cornelius on remand. It is not readily apparent to us why discovery is necessary for either party. The trial court may in its discretion allow discovery if it deems it necessary.

Cornelius contends AKL had prior opportunities to conduct discovery and failed to do so and says that such a failure precludes remand for an evidentiary hearing or

Adler v. Fred Lind Manor, 153 Wn.2d 331, 350, 103 P.3d 773 (2004) ("When disputes exist as to the circumstances surrounding an agreement, we remand to the trial court to make additional findings."). We remand this case to the trial court for an evidentiary hearing on the issue of procedural unconscionability.

B. Application of the Agreement to Cornelius's claims

Cornelius says the Agreement does not apply to all his claims because some of them, specifically those based on his alleged hazing, arose from events before he signed the Agreement. Emphasizing the FAA's policy favoring arbitration, AKL responds that the Agreement is broad and encompasses Cornelius's claims arising from events before its execution. We agree with AKL.

"[W]hen a court interprets such provisions in an agreement covered by the FAA, 'due regard must be given to the federal policy favoring arbitration.'" Mastrobuono v. Shearson Lehman Hutton, Inc., 514 U.S. 52, 62, 115 S. Ct. 1212, 131 L. Ed. 2d 76 (1995) (quoting Volt, 489 U.S. at 475–76). Any doubt about the "'scope of arbitrable issues'" should be resolved "'in favor of arbitration.'" Green Tree Fin. Corp. v. Bazzle, 539 U.S. 444, 445, 123 S. Ct. 2402, 156 L. Ed. 2d 414 (2003) (quoting Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 473 U.S. 614, 626, 105 S. Ct. 3346, 87 L. Ed. 2d 444 (1985)). "Both state and federal courts must enforce [the FAA's] body of substantive arbitrability law." Zuver, 153 Wn.2d at 301.

---

limited discovery. But he cites no law supporting his position. See Prostov, 186 Wn. App. at 823 ("The failure of an appellant to provide argument and citation of authority in support of an assignment of error precludes appellate consideration of an alleged error.").

No. 82264-1-I/15

The Agreement provides, "If you are unable to resolve a claim or dispute arising out of your membership or participation in any Fraternity of Alpha Kappa Lambda-related activity, under the terms of the Program the claim or dispute will be submitted to binding arbitration instead of through the courts." The Plan defines "claim" as

> *any* legal or equitable claim, demand or controversy for any personal injury, equitable relief or property damage arising out of any tort, statute (local, state or federal) or breach of contract involving the Fraternity. This includes but is not limited to any type of allegation of negligence, intentional acts, defamation, discrimination, contribution or indemnity.

(Emphasis added.) The Plan defines "dispute" as "a claim, demand or controversy to which this Plan applies, between persons bound by the Plan or by an agreement to resolve disputes under the Plan, or between a person bound by the Plan and a person or entity otherwise entitled to its benefits." Cornelius brought negligence claims against AKL, based in part on AKL's alleged hazing.

Cornelius does not dispute that the Agreement otherwise applies to his claims; the question is whether the law prohibits the retroactive application of the Agreement. Though Washington courts have not addressed this issue, other jurisdictions have consistently held that, absent language in an agreement to the contrary, the retroactive application of an arbitration agreement is permitted.[8]

---

[8] See Allbaugh v. Perma-Bound, No. C08-5713-JCC, 2009 WL 10676437, at *1, 10 (W.D. Wash. Aug. 14, 2009) (applying an arbitration agreement retroactively under Washington law where the agreement stated that it applied to any claim "arising out of or relating to this Agreement, or the breach, termination, or invalidity thereof"); see GR 14.1; In re Verisign, Inc., Derivative Litig., 531 F. Supp. 2d 1173, 1224 (N.D. Cal. 2007) (retroactively applying an arbitration agreement that covered "not just services provided under the agreement, but also 'any other services provided by KPMG,'" and rejecting plaintiffs' contention that the agreement must contain explicit language authorizing retroactive application); Zink v. Merrill Lynch Pierce Fenner & Smith, Inc., 13 F.3d 330,

15

No. 82264-1-I/16

Cornelius emphasizes that Washington courts interpret contracts according to the "objective manifestation theory," and contends that this theory bars the retroactive application of the Agreement. The "objective manifestation theory of contracts" directs courts to "focus on the agreement's objective manifestations to ascertain the parties' intent." Healy v. Seattle Rugby, LLC, 15 Wn. App. 2d 539, 544, 476 P.3d 583 (2020) (quoting Martin v. Smith, 192 Wn. App. 527, 532, 368 P.3d 227 (2016)). "When considering the language of a written agreement, we 'impute an intention corresponding to the reasonable meaning of the words used.'" Id. (quoting Hearst Commc'ns, Inc. v. Seattle Times Co., 154 Wn.2d 493, 503, 115 P.3d 262 (2005)). Cornelius says that because the Agreement does not explicitly permit retroactive application, such application is prohibited. But the Agreement similarly does not prohibit retroactive application. Moreover, any doubts about the scope of an arbitration clause are resolved in favor of arbitration. See Green Tree Fin. Corp., 539 U.S. at 445 (quoting Mitsubishi Motors Corp., 473 U.S. at 626).

---

331–32 (10th Cir. 1993) (holding that an arbitration agreement applying to any controversy "arising out of your business or this agreement" was "clearly broad enough to cover the dispute at issue despite the fact that the dealings giving rise to the dispute occurred prior to the execution of the agreement."); Smith/Enron Cogeneration Ltd. P'ship, Inc. v. Smith Cogeneration Int'l, Inc., 198 F.3d 88, 99 (2d Cir. 1999) ("As the arbitration clause here similarly does not contain any temporal limitation, the relevant inquiry is whether SCI's claims 'relat[e] to any obligation or claimed obligation under' the 1994 Agreement, not when they arose." (alteration in original)); Kristian v. Comcast Corp., 446 F.3d 25, 33–34 (1st Cir. 2006) (rejecting an argument against retroactive application of an arbitration agreement because "the phrase 'or the services provided' covers claims or disputes that do not arise 'out of this agreement' and hence are not limited by the time frame of the agreements."); Levin v. Alms & Assocs., Inc., 634 F.3d 260, 267 (4th Cir. 2011) ("Although the arbitration clause does not specifically state that it applies to claims accruing before the 2007 Agreement, courts have generally applied broad 'any dispute' language retroactively, especially when combined with language that refers to all dealings between the parties.").

16

No. 82264-1-I/17

Cornelius also contends that interpreting the Agreement as retroactively applicable would render the Agreement substantively unconscionable. He says such retroactive application to the claims of an 18-year-old who was hazed would be "shocking to conscience [sic], monstrously harsh, and exceedingly calloused." Burnett, 196 Wn.2d at 57 ("In determining if a contractual provision is one-sided or overly harsh, courts have considered whether the provision is shocking to the conscience, monstrously harsh, and exceedingly calloused."). But he cites no cases supporting a determination of substantive unconscionability in this context. Given the cases permitting retroactive application of arbitration agreements, we disagree with Cornelius.

We reverse and remand for an evidentiary hearing.

_____
Chun, J.

WE CONCUR:

_____        _____
Mann, C.J.                                              Dwyer, J.

17